ELLENDER C. MASTERSON *et al.*, Appellants, *v.* SAMANDA E. CHEEK *et al.*, Appellees.

### APPEAL FROM MONROE.

A legal, subsisting title, outstanding in another than a defendant in ejectment, will defeat the recovery of the plaintiff.

An infant of any age can be the grantee of land.

Masterson et al. *v.* Cheek et al.

An acceptance of a grant of land which is favorable to the interests of an infant, will be presumed from facts and circumstances ; such as the recording of the deed by the grantor. The intention of the grantor will be regarded as a controlling circumstance.

The law presumes much more in favor of voluntary settlements, especially to infants, than between parties of full age.

THIS was an action of ejectment to recover seventy acres of land, known as the " John M. Hull Tract," lying in the county of Monroe.

The declaration was filed in favor of said plaintiffs, and against Silas T. Cheek.

The defendant filed his plea of the general issue.

On the 9th of November, 1858, the death of the original defendant was suggested, and the present defendants were substituted.

A guardian *ad litem* was appointed for the minor defendants, who answered, requiring strict proof of the allegations in plaintiffs' declaration.

The case was submitted to the court for trial.

The plaintiffs introduced a deed in fee simple, which is set out in the record, made by John M. Hull and wife to Benjamin Masterson, dated the 5th day of December, 1831, for seventy acres of land in said county, being part of claim 770, survey 483, being the improvement and then present residence of said Hull, etc.

*George Fultz*, a witness for plaintiff, testified, that he knew the seventy acre tract of land sued for, and it is known as the John M. Hull tract. Benjamin F. Masterson lived there a long time ago, and died, but not on the place, leaving the plaintiffs, his heirs and children. Witness did not know the land from its numbers, but knew a seventy acre tract, known as the Hull tract, on which Masterson had once lived

*John Cheek* testified, that Masterson lived on said land twenty years ago, about two years. Witness was on the place eleven years as tenant for Masterson. Before Masterson died, M'Gregor entered upon said premises, under a contract to purchase, with Masterson, which contract was not carried out. Afterwards, the defendant, Silas T. Cheek, a brother of witness, went in. Can't tell how he went in, whether with claim of title or not. He was in possession at the commencement of this suit. Witness made his home there with M'Gregor, and staid some time after M'Gregor left. Borchert, the administrator of Masterson, would not have anything to do with it. Masterson died the summer witness went in the second time. M'Gregor left the spring before. Defendant, Silas T. Cheek, entered after the death of Masterson.

The defendants then read in evidence, under the statute of 1855, page 528, the record of proof of a deed in Book "C, destroyed," alleged to have been made in June, 1832, by Benjamin F. Masterson to Andrew J. Masterson *alias* Rainer.

Said John Cheek swore before the commissioners that on or about the first of *April*, 1832, Masterson exhibited to and produced before him a deed which Masterson told witness was a deed conveying it to his son, A. J. Rainer, and always intended him to have said land. That as the said Andrew *was then dead*, and inasmuch as Isabella, his mother, had raised him, she was entitled to said land, and should have it if she wanted it. That witness is unable to read, and knows nothing of the contents of said deed, except as stated by Masterson.

*Daniel Converse* testified before the commissioners, that on or about the 14th day of June, 1842, B. F. Masterson delivered to him, as recorder, said deed of conveyance in fee simple, and properly acknowledged, and it was duly recorded in lost Book C.

Plaintiffs then proved that Daniel Converse, now deceased, testified, on a former trial of this suit, that Benjamin F. Masterson left said deed with him, as recorder, to be recorded, but could not be positive about that. It was recorded, and remained with Converse nine years, and then was taken away from the office by some one not recollected by Converse. He thought said deed was brought by Masterson to be recorded, but cannot be positive about that. At the time the deed was recorded, the boy was a small child, living with his mother in Macoupin or Jersey county, where she had moved shortly after the birth of the child.

Plaintiffs then proved by said John Cheek, that he went with Masterson to Whitehall, in Green county, where the boy's mother then lived, to see the boy, and try to induce him to come down on the land. We started with the boy. He was then fifteen to seventeen years old. During the first night after we started, the boy ran away, and we returned without him. He went there, as he told witness, to put the boy in possession of the land. In a conversation on their return home, Masterson asked witness what he would do, if in his place? Would you take the land away from the boy? Witness said he was a better scholar than witness, and witness could not counsel him. He then said the boy should have the land, if he ran wild as a turkey, and if his mother wanted to look after it, she could do so—she had raised him—but that he would keep the land his life-time. The old man had a paper he said was the deed, and he brought it back with him.

George Fultz testified, that Masterson wanted to sell him the place on the 4th of April, 1853. The boy was then dead. He

Masterson et al. *v.* Cheek et al.

died before he became of age. Masterson offered to sell witness the land repeatedly, and when Masterson spoke to witness about selling the land, the fact that he had made a deed to his son came up in conversation. He remarked, " If you had come half an hour sooner, you would have seen me burn the deed. There are the ashes, now," pointing to the fire-place or stove. Benjamin F. Masterson died in 1853. He had talked with witness several times, the year before, about selling him the land. Fultz said Masterson, the last time, offered to sell him the land partly to induce him to stay at home, as witness supposed. Witness is the brother of Mrs. Masterson.

This was all the evidence in the case, upon which the court found the defendant not guilty ; whereupon the plaintiffs moved the court for a new trial, because the finding was contrary to law, and contrary to evidence ; which motion was overruled, and to which decision of the court, the plaintiffs at the time excepted. The court rendered a judgment against plaintiffs for costs, from which judgment plaintiffs prayed for and obtained this appeal.

Appellants now assign for error—

1st. The court below erred in not finding for plaintiffs.

2nd. In refusing to grant plaintiffs a new trial.

UNDERWOODS, for Appellants.

G. KOERNER, for Appellees.

BREESE, J. The court in this case, before whom the issue was tried, did not err in finding it for the defendants, if they succeeded in showing an outstanding title in another party, though they were not connected with the title of that party in any manner. And this, on the well known principle, that a plaintiff in ejectment must recover on the strength of his own title, without regard to the weakness of his adversary's. A legal, subsisting title, outstanding in another in the land claimed, is inconsistent with title in the plaintiff, and must defeat him. *Hulick* v. *Scoville*, 4 Gilm. 159.

Was such outstanding title shown ? It certainly was, if an infant can be made a grantee in a deed of land, and that he can, no matter what his age may be, no one will dispute or deny. The infant grantee, in this case, was the illegitimate son of the grantor, of tender years, and living with his mother, and the conveyance was voluntary and intended for his benefit, the grantor doing all he could do to make it available for such purpose. He executed it and caused it to be recorded, and so far as these facts go, the grantee is entitled to the benefit of them.

But it is insisted that these facts do not constitute a delivery and acceptance of the deed by the grantee, nor by any person authorized to accept. As a general principle, both delivery and acceptance are essential to the validity of all deeds conveying land, but the principle is to be understood with some qualification, as in the case of infants or lunatics, either of whom may be grantees, but neither of whom can signify an acceptance.

In no case, whether the grantees be infants or adults, is a formal delivery and acceptance essential, though there must be acts shown evincing such intentions. The intention of the party is the controlling element in contracts of this character, and wherever it is manifest, by facts and circumstances, that the grantor in delivering a deed to the recorder to be placed on record without any explanation, intended to part with his title, the presumption is, and should be, that he then delivers it for the benefit of the grantee, and it should and will take effect from that moment, an acceptance by the grantee being presumed from the beneficial nature of the transaction. How useless would be a delivery to, and how impossible an acceptance by, an infant one day old, or a lunatic.

In such cases, courts are bound to hold the conveyance beneficial to such persons, and this, although the grantee had not authorized and could not authorize the recorder or other person to receive it, and was at the time, wholly ignorant of its execution. The great question is, did the grantor, by the execution of the deed and placing it on record, intend thereby to part with his title absolutely and vest it in another, without any intention to resume it, or expectation of deriving a benefit from an interest still remaining in him in the land? The court, sitting as a jury, has found in the affirmative, and, we think, upon ample testimony—an acceptance, therefore, must be presumed. The intention must control.

If in other cases, and those are cases cited by the appellant's counsel, it appears from the attending circumstances that the grantor had the intention still to remain the owner of the land, and there lingered in his breast a hope of enjoying the benefit of it, as where he conveys to a party to keep it from creditors or for other sinister purposes, a more formal acceptance must be shown. In all cases of this kind, the real secret intent of the grantor must be looked to, and ascertained from the circumstances.

All the cases cited on both sides are reconcilable on this consideration—that the intention is, and must be, the controlling element.

In a case like this, where the conveyance was voluntary, and to an infant who died before he reached an age to assent or

accept the conveyance, a delivery and acceptance will be more readily presumed, than in the cases to which reference is made by the appellant's counsel.

The principle being admitted that an infant of tender years can take by deed, not having, at the same time, discretion to accept or refuse, and dying before that period arrives, and the grantor having performed every act he could perform to pass the title to the infant, and it being for his benefit, it is fair to presume he assented to it. The grantor in this case, must be regarded, as to his subsequent possession of the deed, as the mere custodian or trustee for his son. The facts were fully before the court to find the intention of the grantor, and we think it was well found, that he intended his son should own this land, reserving no future enjoyment of it to himself. It was an absolute divestiture of title, which the grantor could not again resume.

The law presumes much more in favor of the delivery of deeds in the case of voluntary settlements, especially when made to infants, than it does between parties of full age, in ordinary cases of bargain and sale.

We do not deem it necessary to comment on the many cases referred to by counsel in this case, as they have all been examined by this court in the case of *Bryan et al.* v. *Wash et al.*, 2 Gilman, 557, which case is full to the point in controversy.

The judgment of the Circuit Court is affirmed.

*Judgment affirmed.*