[L. A. No. 3757.    Department Two.—December 12, 1916.]

## ANNA TURNER, Respondent, v. J. S. TURNER et al., Appellants.

ACTION TO SET ASIDE DEEDS—FRAUD—PLEADING—INCONSISTENT CAUSES OF ACTION—RELIEF.—In an action by a divorced wife to recover her share of certain community property, which in the first cause of action set out in her complaint she alleged her husband, during the existence of the community, secretly conveyed to his two infant sons for the purpose of defrauding her, it was not error to permit the plaintiff, when the cause was called for trial, to abandon such cause of action and to rely upon the second cause of action, although inconsistent therewith, which alleged that one of such sons, subsequent to the death of the other, fraudulently secured from her a deed of her interest in such property, and that she sought recovery of such interest as an heir at law of such deceased son.

ID. — DEED TO INFANT SON — DELIVERY — SUFFICIENCY OF EVIDENCE. — The delivery of a deed made by a father to his infant son is sufficiently established by proof of its delivery to a notary public, who placed it upon record, and by the declarations of the grantor in his petition for letters of administration upon the estate of such grantee, and in the inventory of the estate, that the estate consisted of the property which he had deeded to his son.

ID.—DEED—INFANT GRANTEE—DELIVERY.—A deed to an infant requires no delivery to or acceptance by the grantee. Delivery to a third person for the benefit of the infant is in all cases sufficient to vest title.

APPEAL from a judgment of the Superior Court of Inyo County, and from an order denying a new trial.   William D. Dehy, Judge.

The facts are stated in the opinion of the court.

S. E. Vermilyea, S. L. Carpenter, and Wm. B. Himrod, for Appellants.

Wm. Lair Hill, James P. Montgomery, and Frank C. Scherrer, for Respondent.

HENSHAW, J.—Plaintiff alleged that for many years prior to 1889 she had been the wife of defendant J. S. Turner. In that year they were divorced, the divorce decree containing no adjudication of property rights.   She took upon herself the custody, care, and support of two daughters of the marriage, and the husband took upon himself the like custody, care, and support of two other daughters and two sons, Edgar M. and George W.   During the existence of the community and before the divorce much community property had been accumulated.   In 1882 the husband secretly conveyed a ranch known as the Howard ranch to the two infant sons, Edgar M. and George W.   In 1894 the son Edgar M. died intestate.   He had attained his majority.   He was childless, unmarried, and his heirs at law were his father and his mother.   His estate consisted of an undivided one-half of the Howard ranch, the other moiety of which was owned by his brother, defendant George W. Turner.   J. S. Turner, the father, sued for and obtained letters of administration upon the estate of his deceased son, and in the course of administration caused to be filed his verified inventory and appraisement of the property of the estate, wherein it was shown that the only property was an undivided one-half of the Howard ranch.   In October, 1904, the defendant George W. Turner, who had attained his majority, executed to his father his deed of grant, bargain, and sale, conveying to him all of the Howard ranch.   This son had been brought up by his father and for many years had never seen nor communicated with his mother.   She was sixty-two years old and stricken with poverty, and was compelled to support herself by laboring from day to day in the most humble and menial employments.   In October, 1909, her son, the defend-

ant George W. Turner, called upon her in Stockton, California, where she was residing. He greeted her with manifestations of fond affection, expressed the most ardent filial love for her, deplored her impoverished condition, and urged her to make a deed to him of her interest in the Howard ranch, in consideration of which and of his love and pity for her he would contribute to her support during the remainder of her life. Under these circumstances she executed the deed which he had prepared. He gave her fifty dollars and went his way. She has never seen him since, nor has he ever contributed anything to her support. The falsity of these representations of love and affection are averred, and it is charged that the son, under the influence of his father, designedly and fraudulently, and in conspiracy with his father, took these means to induce the ignorant, fond, and confiding mother so to part with her land. Another phase of this complaint charged that the execution of the deed by defendant J. S. Turner to his infant sons made during the coverture of the parties was fraudulently designed and executed to deprive plaintiff of her share of the community property. A decree was sought establishing all of these things and seeking an award to the plaintiff of her share of the community property and of its rents, issues, and profits. When the cause came on for trial the plaintiff's attorneys announced their abandonment of all the contentions going to the nature and extent of the community property, because of their inability to prove the facts. With this also fell their contention that the deed executed by J. S. Turner to his infant sons was executed in fraud. There was left in the case the controversy over the asserted fraudulent procurement by the son of the deed from his mother to the undivided one-fourth of the Howard ranch. Upon the issues presented by this controversy the trial was had and the court found in accordance with the allegations of the complaint. It found that the deed executed by the father to his two minor sons had vested in them the fee-simple title to the whole of the Howard ranch, and the defendant Turner was estopped from denying the validity and due execution of this deed; that by the death of the son Edgar M., title to his undivided one-half of the farm vested in equal moieties in his father and mother; that the son George W. did, by the fraudulent devices above indicated, secure from his mother a deed to her one-fourth of the Howard ranch. The judgment of the court following these findings and its conclu-

sions of law denied to the plaintiff any right by virtue of a community interest in and to the property of the Howard ranch, and annulled the deed made by plaintiff to her son.

Upon appeal the grievance of appellants is based upon the assertion and argument that the court erred in allowing plaintiff to abandon her contention touching her right to the community property, and to rest her action upon a demand for relief against the deed which had been fraudulently obtained from her by her son. It is said that under the first cause of action she had charged that the deed made by the father to his infant sons was itself fraudulent and void, and that therefore no title passed to the sons; that she changed her attitude and successfully sought to have this deed declared valid and then sought to obtain an undivided one-fourth of the ranch as heir at law of her deceased son, Edgar M., by force of the validity of this deed from the father to his minor children. The procedure of the court by which this was allowed to be done is declared to be violative of all sound and well-settled rules of law, in that the plaintiff was allowed to change her legal position as the wind changes (*Davis* v. *Winona Wagon Co.*, 120 Cal. 244, [52 Pac. 487]) ; in that the judgment is not warranted by the pleading, and in that plaintiff is given a recovery upon a case not pleaded. (*Ellis* v. *Rademacher*, 125 Cal. 556, [58 Pac. 178] ; *Davis* v. *Pacific Tel. & Tel. Co.*, 127 Cal. 312, [57 Pac. 764, 59 Pac. 698].)

It is quite true that if plaintiff had succeeded in avoiding the deed made by her husband to the minor sons upon the ground that it did violence to her rights in the community property, and was conceived and executed in fraud of those rights, the sons themselves would have been stripped of title, and she, the mother, would have recovered one-half of the Howard ranch directly from her former husband, as being her community interest therein. Upon the other hand, she charged with equal particularity that she had been fraudulently deprived of her one-fourth interest in the Howard ranch, which one-fourth interest could be hers only upon the theory that the father's deed to his minor sons vested title in them. Her attitude, then, amounted to this : that if she should succeed in establishing her community interest in the property and the fraudulent character of her husband's deed to her sons, she recovered without regard to the swindle subsequently perpetrated upon her by her son. If, however, she failed in this,

so that it was decreed that title to this ranch did vest in the sons, then it was still open to her to recover her one-fourth as heir at law of her deceased son by having the court in equity set aside as fraudulent the deed which she had been induced to make. There is nothing in our system and rules of pleading which forbids such a complaint, even if the positions taken in it may seem to be inconsistent. (*Tanforan* v. *Tanforan,* 173 Cal. 270, [159 Pac. 709].)

When it was made known that the plaintiff would abandon her effort to avoid the deed made by J. S. Turner to his minor children, J. S. Turner, in turn, strenuously insisted that he had not parted with title to the Howard ranch and that his deed conveyed no title for lack of delivery; that it was recorded without his authority, and more to like effect. A deed to an infant requires no delivery to or acceptance by the grantee. Delivery to a third person for the benefit of the infant is in all cases sufficient to vest the title. (*Sneathen* v. *Sneathen,* 104 Mo. 201, [24 Am. St. Rep. 326, 16 S. W. 497] ; *Colee* v. *Colee,* 122 Ind. 109, [17 Am. St. Rep. 345, 23 N. E. 687] ; *Walker* v. *Walker,* 42 Ill. 311, [89 Am. Dec. 445].) Turner delivered the deed to the notary public for his children and it was thus placed upon record. Turner further in his petition for letters of administration upon the estate of his son Edgar M. expressly stated that that estate consisted of an undivided one-half of the Howard ranch which he had deeded to his son. Under oath in the inventory of the estate he swore that one-half of this ranch belonged to the estate of his son. Here was ample evidence to support the finding of the court of delivery.

The judgment and order appealed from are therefore affirmed.

Melvin, J., and Lorigan, J., concurred.

Hearing in Bank denied.