[S. F. No. 7673.   Department Two.—March 22, 1917.]

In the Matter of the Guardianship of the Person and Estate of GERALD MATHEWS, a Minor. WARREN A. ROUSE, Petitioner and Appellant; ANNIE MATHEWS, Respondent.

PARENT AND CHILD—RIGHT OF MOTHER TO GUARDIANSHIP—PREFERENCE OVER FOSTER PARENT—POVERTY OF MOTHER.—Under section 1751 of the Code of Civil Procedure, construed in connection with section 246 of the Civil Code, the mother of a minor child under the age of fourteen years, who had not abandoned it and was not a dissolute or criminal person, if found by the court "competent to discharge the duties of guardianship," is entitled to be appointed the guardian of such child notwithstanding she lacks means for its support, in preference to a person of adequate means with whom the child had lived for upward of ten years and whom it had come to regard as its parent.

APPEAL from an order of the Superior Court of Alameda County appointing a guardian of a minor child. William S. Wells, Judge.

The facts are stated in the opinion of the court.

W. B. Rinehart, and Charles M. Shortridge, for Appellant.

James L. Nagle, Louis H. Ward, and P. B. Nagle, for Respondent.

HENSHAW, J.—This is a second appeal in the matter of the guardianship of Gerald Mathews, a minor. The decision on the former appeal will be found reported in 169 Cal. 26, [145 Pac. 503]. Upon that appeal this court, with the evidence before it, was called upon to review a finding of the trial court that the mother "is an unfit, incompetent, and improper person to have the care, custody, or control of her minor child." The holding was that the evidence so presented did not support this finding. Upon this present appeal there are tendered for our consideration findings in many respects different from the single finding which was under review in the previous appeal. The appellant rests his case upon these new findings, and insists that under them his petition for guardianship should have been granted and that of the mother denied. It becomes necessary then to set forth these findings, and it will be done as succinctly as possible.

Warren A. Rouse, the petitioner, is married and is and for many years has been living with his wife, Carrie E. Rouse. To them and into their custody was given the minor when he was but eight months of age. This was in October, 1906. The child is, therefore, now about eleven years of age. The father is and for many years has been dead. Ever since its reception into the home of the Rouses it has been treated by them in all respects as their child. There was no agreement entered into between the Rouses and the mother of the child at the time the former received it, nor thereafter, going to either its care or support, to the mother's contribution thereto, or to the duty of the Rouses to restore the child to the mother upon demand. But to the contrary, the mother has neither supported nor maintained the child during all of these years, nor has she provided for its support and maintenance, and she never has been "and is not now able to support and maintain her child." The Rouses have great affection for the child and are in all respects fit, proper, and competent persons to have its care, custody, and control, and "it is for the best interest of said minor child, with respect to its temporal, mental, and moral welfare that he remain" in their custody. Upon examination the court finds that the child is of sufficient age to form an intelligent preference in the matter of his custody, and that his preference is to remain in the care, custody, and control of the Rouses. During the time that

they have had the child the mother has made small voluntary contributions toward its support, not exceeding in the aggregate the sum of $150. The mother "is not the proper person, in the judgment of this court, to have the care, custody, or control of said minor Gerald Mathews, but she is not incompetent but is competent to discharge the duties of guardianship." "That while said Annie Mathews, respondent, is not incompetent to discharge the duties of guardianship, yet considering her condition, her surroundings, and ability to care for said minor child, the court finds that the best interests of said minor child in respect to its temporal, mental, and moral welfare is that said child remain in the custody of the petitioner; and the affections of said minor child and' its relationship to the petitioner have become fixed to the extent that said minor child has come to regard the petitioner and said Carrie E. Rouse as his parents and that said Annie Mathews, the respondent, to that extent is practically a stranger to him."

No controlling law of the case was declared upon the former appeal. All that the court was there called upon to do and did was to review the evidence addressed to the finding of the incompetency of the mother to discharge the duties of guardianship, and the holding of this court, after a review of the evidence, was that the finding was not sustained. Upon the second trial the court made its findings with elaboration, which findings cover numerous probative matters, and together present, as they are designed to present, a survey of the whole situation. Also it is quite apparent that notwithstanding the influence and effect which the findings thus made may have upon the determination of the ultimate question of the competency of the mother, the court felt constrained by virtue of our former decision to find in terms that she was competent, while also finding that she was not the proper person to be appointed guardian.

We are now called upon, in the light of all of these other findings, to determine whether the denial of guardianship letters to the Rouses was made compulsory upon the court (as the court unquestionably deemed that it was made compulsory) by the finding of competency of the parent, coupled with the force of section 1751 of the Code of Civil Procedure, which declares that the father or the mother of a minor child under the age of fourteen years, if found by the court "com-

petent to discharge the duties of guardianship,'' is entitled to be appointed a guardian in preference to any other person. Elsewhere (Civ. Code, sec. 246) the law declares that the primary consideration by which the court is to be guided in the appointment of a general guardian is ''what appears to be for the best interests of the child in respect to its temporal and its mental and moral welfare; and if the child is of sufficient age to form an intelligent preference, the court may consider that preference in determining the question.'' (Civ. Code, sec. 246, subd. 1.) If the language just quoted from section 1751 of the Code of Civil Procedure were not upon our books, it would leave as the controlling consideration the language from section 246 of the Civil Code just quoted, and as the findings distinctly and repeatedly declare not only that the best interests of the child demand its continued control under the Rouses, but as the child itself has expressed that preference, as furthermore the court has found that the mother, while competent, is not the proper person, while the Rouses are in all respects not only competent but fit and proper persons, no difficulty would be presented in making the determination.

The difficulty arises from the declaration of section 1751 of the Code of Civil Procedure touching the parent's right, which declaration of necessity must be read and construed with the language of section 246 of the Civil Code.

In its last analysis, then, our question is, What is the meaning of the phrase ''competent to discharge the duties of guardianship'' as that language is employed in section 1751? ''Competency'' is a word of broad and varied application. Within the legitimate scope of its meaning as employed in the law, it embraces many attributes. Wealth alone does not establish competency any more than poverty alone establishes incompetency. Wealth and mental capacity together do not always establish competency, though, upon the other hand, lack of means and lack of mental capacity would clearly render a petitioner for guardianship letters incompetent. Wealth and ability may be found in a dissolute and even in a criminal life, and no court would award guardianship over a minor to such a dissolute or criminal person, even if he were found to be abundantly possessed of mental ability and financial means. Poverty alone of itself no more establishes incompetency than wealth alone establishes competency. No

one would say that the state would or should deprive the natural parent of the custody of its child because dire poverty, which may strike any of us, had stricken that parent. To the contrary, the state, in recognition that poverty shall not be a ground for the severance of the relation of parent and child, has itself made provision to aid in the support of the children of the poor, the parents being expected to contribute in accordance with their limited means. It is only when a parent has abandoned the child, or has been found disqualified for other reasons than poverty alone, that under our law the parental rights of guardianship are terminated and destroyed. (Civ. Code, sec. 246, subd. 4.)

The finding of competency in this case is a full finding of competency in all mental and moral respects. No question is presented of the unfitness of the mother for dissoluteness, immorality, unwillingness to labor, or for any other reason, saving as that competency so found is affected by her poverty. But touching this, as we have said, poverty itself, unless accompanied by an abandonment, or some other disqualification as above suggested, no one of which is here found, is not sufficient to justify the denial by a court of the preferential parental right declared in section 1751. Being competent, the mother is still entitled to the legal custody of this child which she has not abandoned, and to whose support she has contributed as her limited means would permit. Upon taking such custody she may still be compelled to seek state aid in its maintenance. But this is only a part of the cruel lot which too frequently falls on the very poor.

It is argued with great force that the trend of modern decisions is to regard as of primary importance the welfare of the minor himself. This is most true. The decisions to this effect are made either under the permission of the law, which contains no such restriction as that found in our section 1751, or else are given under the command of the law which, in effect, declares that over and above all else the controlling consideration shall be the welfare of the child. If we were thus at liberty to act, it might well be that the custody of this child, under the findings of the court, would be given to the Rouses. This is the injunction declared in our own law by subdivision 1 of section 246 of the Civil Code. But, as we have pointed out, unless the parent has for some reason (and no such reason is here found) forfeited his preferential right

to the guardianship of his offspring, all considerations of the welfare of the child must, under our law, be regarded as subordinate to that right.

The decree appealed from is therefore affirmed.

Lorigan, J., and Melvin, J., concurred.