[Sac. No. 3191.  In Bank.—May 1, 1922.]

## In the Matter of the Estate and Guardianship of TETSUBUMI YANO, a Minor.

[1] GUARDIAN AND WARD—MINOR UNDER FOURTEEN YEARS—PREFERENTIAL RIGHT OF PARENT.—The father of a minor under the age of fourteen years is entitled as a matter of right under the provisions of the codes to the guardianship of such minor, unless shown to be incompetent.

[2] ID. — APPLICABILITY TO GUARDIANSHIP OF PERSON AND ESTATE. — The code makes no distinction as to the preferential right of a father of a minor under the age of fourteen years to letters of guardianship between guardianship of the person and guardianship of the estate.

[3] ID.—REAL PROPERTY ACQUIRED BY NATIVE-BORN CHILD OF JAPANESE ALIEN—RIGHT OF FATHER TO LETTERS.—An order denying the petition of an alien Japanese for letters of guardianship of the person and estate of his minor daughter cannot be sustained on the ground that the minor took no title to real property which her father had caused to be conveyed to her and of which her estate consisted, where she was a native-born American citizen, since her infancy did not incapacitate her from becoming seized of such title.

[4] INFANTS — DEED — DELIVERY AND ACCEPTANCE — PRESUMPTION. — When a deed clearly beneficial to an infant is given to him his acceptance will be presumed, and the recording of the deed is a sufficient delivery.

[5] ALIENS—DEED—PASSING OF TITLE.—Conveyance to an alien disqualified under the law to hold real estate conveys title to such alien, until the same is divested by the state or by inquisition had upon its denouncement.

[6] GUARDIAN AND WARD—RIGHTS OF MINOR UNDER DEED—JURISDICTION.—The nature and extent of the property rights of a minor under a deed cannot be determined in a proceeding for letters of guardianship, since a guardian is required to represent a minor in such a controversy.

[7] ALIENS—PAYMENT OF CONSIDERATION—ABSENCE OF IMPLIED TRUST. The fact that a Japanese alien paid the consideration for the transfer of real property to his minor daughter, who was a native-born American citizen, did not establish a trust in the father's

---

1.  Right of father to be appointed guardian of minor child, note, 33 L. R. A. (N. S.) 868.

5.  Power of alien to hold lands, note, 14 Am. Dec. 97.

favor under section 853 of the Civil Code, since an implied trust
will not arise in favor of aliens who are prohibited from holding
lands.

[8] ID.—DEED TO MINOR—LAWFUL ACT OF JAPANESE ALIEN.—The act
of a Japanese alien in securing conveyances of land to his minor
daughter because the laws did not permit him to buy it for him-
self was not unlawful where the daughter was a native-born
citizen of the United States.

[9] GUARDIAN AND WARD — QUALIFICATION OF ALIENS. — An alien
Japanese is not disqualified merely by reason of his being an alien
from qualifying as a guardian, and the very fact that the In-
itiative Alien Property Act of 1920, in terms, creates such dis-
qualification, is a recognition of the right of such aliens to qualify
and serve as guardians in the absence of such inhibition.

[10] ID. — DISQUALIFICATION OF ALIENS — INITIATIVE ALIEN PROPERTY
ACT OF 1920 — TREATY BETWEEN UNITED STATES AND JAPAN NOT
VIOLATED.—The Initiative Alien Property Act of 1920, providing that
no alien disqualified to acquire and hold real estate may be appointed
guardian of that portion of the estate of a minor which consists of
property which such alien is inhibited from acquiring by reason of
the provisions of the act, is not violative of the treaty between
the United States and Japan, since the rights and privileges which
the treaty declares the Japanese citizen shall enjoy are such rights
and privileges only as may be necessary for the protection and
security of his person or property.

[11] ID. — ELIGIBILITY TO APPOINTMENT AS GUARDIAN — NATURE OF
RIGHT.—Eligibility to appointment as guardian is not property,
nor is it a right of property, but it pertains exclusively to the
person and may be given or withheld by the law of the state in
which the parent and child reside.

[12] ID. — DISQUALIFICATIONS OF ALIENS AS GUARDIANS — INITIATIVE
ALIEN PROPERTY ACT OF 1920—DISCRIMINATION AGAINST JAPANESE
CITIZENS.—The Initiative Alien Property Act of 1920, forbidding
the appointment of any alien not eligible to citizenship as guardian
of a minor with respect to property of the minor of a character
which such alien cannot acquire himself, that is to say, with re-
spect to agricultural land belonging to such minor, clearly dis-
criminates against citizens of Japan residing in this state and is
violative of section I of article XIV of the constitution of the
United States.

[13] ID.—CLASSIFICATION OF ALIENS—CONSTITUTIONAL LAW.—Persons
who are ineligible to citizenship under the laws of the United
States do not form, by reason of their ineligibility alone, a class
by themselves, for which the state may enact peculiar legislation
depriving them of rights or privileges which are accorded to others
not of that class, and which rights or privileges have no rela-

tion to their disability, and such attempted classification does not relieve the Initiative Alien Property Act from the charge that it violates the federal constitution.

[14] ID.—INITIATIVE ALIEN PROPERTY ACT—VIOLATION OF GUARANTEE TO MINOR—CONSTITUTIONAL LAW.—The Initiative Alien Property Act, taken in connection with section 1751 of the Code of Civil Procedure, denies to a native-born child of a Japanese alien, the privileges guaranteed to such child by the fourteenth amendment of the federal constitution and by section 21 of article I of the state constitution, which declares that no citizen or class of citizens shall be granted privileges or immunities which, upon the same terms, shall not be granted to all citizens.

[15] ID.—PERSONS EVADING LAW—INSUFFICIENT GROUND FOR CLASSIFICATION.—Since an alien parent by procuring his appointment as guardian of his native-born child cannot acquire, possess, or enjoy agricultural land, the Initiative Alien Property Act cannot be upheld on the ground that such aliens constitute a class, and the only class who attempt to evade the law forbidding alien ownership.

APPEAL from an order of the Superior Court of Sutter County denying a petition for letters of guardianship of the person and estate of a minor. K. S. Mahon, Judge. Reversed.

The facts are stated in the opinion of the court.

Algernon Crofton, Chas. A. Wetmore, Jr., and Gillogley, Crofton & Payne for Appellant.

U. S. Webb, Attorney-General, Leon French and Frank English, Deputies Attorney-General, for Respondent.

Albert H. Elliot and Guy C. Calden, *Amici Curiae.*

THE COURT.—This is an appeal by Hayao Yano, an alien Japanese, from an order of the superior court of Sutter County denying him letters of guardianship of the person and estate of his minor daughter, Tetsubumi.

The petition for guardianship was filed October 23, 1920, and alleged that petitioner was the father of said minor daughter; that she was of the age of two years; that she had estate in Butte County, consisting of fourteen acres of land, more or less, and that she was in the care and

custody of petitioner and his wife, the mother of said minor, who were her only relatives in said county of Sutter.

It was made to appear on the hearing by undisputed evidence that the petitioner was a Japanese and not a citizen of the United States or the state of California; that he was and had been for several years a resident of California; that he was of good character, a good father, sober and industrious. That the minor was his daughter, aged between two and three years, and a native-born citizen of the United States and the state of California. That she had no guardian, and held title to fourteen acres of improved land in Butte County of the value of three thousand dollars or thereabouts, which required care and cultivation.

Under this state of facts the petitioner was entitled to letters of guardianship unless the fact of his being a Japanese alien defeated his right.

[1] It is settled law in this state that the father of a minor under the age of fourteen years is entitled as a matter of right under the provisions of the codes to the guardianship of such minor, unless shown to be incompetent. Competency is presumed and should be so found by the court in the absence of evidence to the contrary. (Code Civ. Proc., sec. 1751; *Matter of Forrester*, 162 Cal. 493 [123 Pac. 283]; *Guardianship of Mathews*, 169 Cal. 26 [145 Pac. 503]; Id., 174 Cal. 679 [164 Pac. 8]; *Guardianship of Gallcher*, 2 Cal. App. 364 [84 Pac. 352]; *Estate of Moore*, 179 Cal. 302 [176 Pac. 461]; *Guardianship of Person and Estate of Akers*, 184 Cal. 514 [194 Pac. 706].)

[2] The code makes no distinction as to this preferential right to letters of guardianship between guardianship of the person and guardianship of the estate. The last above cited expression of the rule of the statute involved guardianship of both person and estate. Indeed, the parents' right to letters of guardianship of the person of a minor child scarcely needs the protection of section 1751 of the Code of Civil Procedure, as such parent is by law the natural guardian and entitled to the custody of the person of a minor child. (Civ. Code, sec. 197; *In re Hunt*, 103 Cal. 355 [37 Pac. 206].) The mere fact, if such were shown, that the minor would receive better care, training, and support, and be under better influences under other guardianship, cannot defeat the right of the parent to

letters, except under the circumstances set out in subdivision 4 of section 246 of the Civil Code. (*In re Mathews, supra.*) No such showing was made here.

There was no finding of incompetency and no evidence which would have justified such finding.

The sole ground for denying the petition, as appears from the record, is contained in the statement of the court refusing letters to the petitioner as follows: "The guardianship is denied. It appears that the child had no property. The property or deed was taken in the child's name solely to evade the laws of the state of California."

It appears from the transcript that subsequent to the Alien Land Act of 1913 (Stats. 1913, p. 206) denying the right to acquire real estate to aliens disqualified to become citizens, and about a year prior to the initiative act of 1920 (Stats. 1921, p. lxxxiii), which adds the further disqualification of such alien to act as guardian of a minor for property which the alien himself is incompetent to acquire under the act, the petitioner bargained for and caused to be conveyed to his daughter, the minor named in this proceeding, the tract of land referred to in the petition. The deed was introduced in evidence showing the conveyance by the grantors directly to the minor. The petitioner testified that he had the land deeded to his infant daughter because he was Japanese and could not take title himself; that his baby was a citizen of the United States and that he had the land conveyed to her for that reason alone.

[3] The ruling of the court in this matter cannot be sustained on the ground stated in the order, that the minor took no title to the property.

She was a native-born American citizen and as such entitled to acquire and hold property, real and personal. Her infancy did not incapacitate her from becoming seized of the title to real estate. (22 Cyc. 527, 529; *Masterson* v. *Cheek*, 23 Ill. 72; *Scanlon* v. *Wright*, 13 Pick. (Mass.) 523 [25 Am. Dec. 344].)

[4] Delivery to and acceptance by an infant will be presumed. When a deed clearly beneficial to an infant is given to him his acceptance will be presumed, and the recording of the deed is a sufficient delivery. (22 Cyc. 529; *Masterson* v. *Cheek, supra; Hadden* v. *Neighbarger,* 9 Kan.

App. 529 [58 Pac. 568]; *Spencer* v. *Carr,* 45 N. Y. 406
[6 Am. Rep. 112]; *De Levillain* v. *Evans,* 39 Cal. 120;
*Turner* v. *Turner,* 173 Cal. 782 [161 Pac. 980].)

[5]   Even a conveyance to an alien disqualified under the
law to hold real estate has been generally held to convey
title to such alien, until the same is divested by the state
or by inquisition had upon its denouncement. This was
so even under the common law which excluded aliens from
acquiring and holding real property. (*Merle* v. *Mathews,*
26 Cal. 455; *Phillips* v. *Moore,* 100 U. S. 208 [25 L. Ed.
603, see, also, Rose's U. S. Notes]; *Norris* v. *Hoyt,* 18 Cal.
217; *Santa Paula Water Co.* v. *Peralta,* 113 Cal. 44 [45
Pac. 168].) It is apparent that the present alien land
law recognizes the same rule, as it provides that action shall
be brought by the state for the escheat of any lands con-
veyed to aliens in contravention of the act.

[6]   In any event, the nature and extent of the minor's
property rights under the deed in question, she being quali-
fied to own real estate, could not be determined in this
guardianship proceeding. She would require a guardian
to represent her in the settlement of just such a con-
troversy.

[7]   The fact that the father paid the consideration for
the transfer of this land to the minor does not establish a
trust in the father's favor under section 853 of the Civil
Code. Where aliens are prohibited from holding lands, an
implied trust by operation of law will not arise in their
favor. (2 Corpus Juris, 1057, sec. 5; *Phillips* v. *Crom-
mond,* 19 Fed. Cas. (p. 497) No. 11,092; *Hubbard* v. *Good-
win,* 3 Leigh (30 Va.), 492; *Leggett* v. *Dubois,* 5 Paige Ch.
114 [28 Am. Dec. 413].) Besides, the attempt of the alien
to obtain title through such a trust would be in violation
of the alien land law, and could not be enforced.

[8]   The act of petitioner in securing conveyances of
land to his daughter, while confessedly carried out because
the laws of California did not permit him to buy it for
himself, was in no sense unlawful since the daughter is a
citizen of the United States and entitled to acquire and
own real estate. There is nothing in the evidence to in-
dicate that it was not the purpose of this conveyance to
vest absolute title to the land in the minor. If any legal
ground appears in the record for denying letters of guard-

ianship it must be found elsewhere than in the reason stated in the order of the court.

[9]   There is no claim that an alien Japanese was disqualified merely by reason of his being an alien from qualifying as a guardian at the time this petition was filed and acted upon.

The very fact that the act of 1920, in terms, creates such disqualification, is a recognition of the right of such aliens to qualify and serve as guardians in the absence of such inhibition.

All the proceedings in the superior court, including the final order denying the petition, were had in this matter before the Initiative Alien Property Act of 1920 went into effect, though the final order was not made until after the adoption of the law by popular vote at the election of November 2, 1920.   (Stats. 1921, p. lxxxiii.)

That act provided that thereafter no alien disqualified to acquire and hold real estate "may be appointed guardian of that portion of the estate of a minor which consists of property which such alien . . . is inhibited from acquiring, possessing, enjoying or transferring by reason of the provisions of this act." It further provides that the "public administrator of the proper county or any other competent person or corporation may be appointed guardian of the estate of a minor citizen whose parents are ineligible to appointment under the provisions of this section." (Sec. 4.)

Section 12 of the act declares that it "shall not affect pending actions or proceedings, but the same may be prosecuted and defended with the same effect as if this act had not been adopted."

The act did not take effect until December 9, 1920, five days after the official declaration of the vote thereon by the secretary of state. The order appealed from, having been made on November 6, 1920, was, of course, unaffected by the act. What we have already said sufficiently shows that the order was erroneous and that it must be reversed. The appellant, however, has presented and elaborately argued certain additional points upon which he claims the right to a reversal, to the effect that the initiative act of 1920, in the respect here involved, is invalid upon constitutional grounds. Section 4 of the act also authorizes

the superior court to remove a guardian whenever it appears "that facts exist which would make the guardian ineligible to appointment in the first instance." If the court below, upon a retrial, should believe that the provisions of the act declaring the petitioner ineligible are valid, it may be that it would refuse to issue letters to him, or, having done so, it might immediately revoke them on the ground that as the facts showing ineligibility appeared in the proceedings it was its duty to do so. Under these circumstances we deem it advisable to consider and determine the additional points presented.

These points are: (1) That the law in question violates the treaty between the United States and Japan [37 Stats. 1504]; (2) that it denies to the Japanese parent the equal protection of the laws, contrary to section 1, article XIV, of the constitution of the United States; (3) that it denies to the child, who is a native-born citizen of the United States, the privileges guaranteed to her by section 21, article I, of the constitution of California, and the privileges and equal protection of the laws secured to her by the fourteenth amendment aforesaid.

1. The preamble of the treaty states that it is made to fix clearly and positively "the rules which are hereafter to govern the commercial intercourse" between the respective countries. The opening clause of article I declares that the citizens of each country shall have liberty to enter and reside in the territory of the other, carry on trade therein and, among other things, to lease land for residential and commercial purposes. It contains no guarantee of the right to lease land for agricultural purposes. The principal clause relied on is a part of article I, as follows:

"The citizens or subjects of each of the High Contracting Parties shall receive, in the territories of the other, the most constant protection and security for their persons and property, and shall enjoy in this respect the same rights and privileges as are or may be granted to native citizens or subjects, on their submitting themselves to the conditions imposed upon the native citizens or subjects."

[10] This it will be seen guarantees to subjects of Japan residing here protection and security for their persons and property and provides that in this respect, that is, in respect to such protection and security, they shall enjoy

the same rights and privileges as citizens of this country. It is suggested, though the appellant does not lay stress upon this point, that one of the privileges of a native citizen of this country is the right to be appointed guardian of his own child, and that as the act forbids the appointment of a Japanese alien residing here as guardian of his own child, it is, therefore, a direct denial of a privilege secured by the treaty. The language of the treaty, however, does not include such privilege. The rights and privileges which it declares the Japanese citizen shall enjoy here are such rights and privileges only as may be necessary for the protection and security of his own person or property. It cannot be said that it is necessary for the security or protection of either the person or the property of a parent that he should become the guardian of his own child. [11] Eligibility to appointment as guardian is not property, nor is it a right of property. It pertains exclusively to the person. It may be given or withheld by the law of the state in which the parent and child reside. The withholding thereof from all parents would be within the power of the state. Undoubtedly, when given, it is a privilege pertaining to the individual parent, but it is not a privilege which enhances his own personal security or which assists him in protecting his property. A deprivation of the privilege would in no manner endanger the person of the parent, or jeopardize his property. The child, being a native citizen of the United States, cannot as such, invoke the protection of the treaty to secure to the father, a citizen of Japan, equal privileges with other residents who are not citizens of Japan. The question whether the child is deprived of the privilege of having its own father serve as its guardian does not arise under the treaty. It must look to the provisions of the laws of this country for the protection of its privileges as a citizen thereof. The law does not violate the treaty with Japan.

[12] 2. Our law provides that the father or mother of a minor child less than fourteen years of age, if competent, is entitled to be appointed guardian of such child in preference to any other person. (Code Civ. Proc., sec. 1751.) This law is general in terms. It is not confined to citizens in its application, but purports to confer the right upon all residents regardless of citizenship. The initiatory act of

1920 (Stats. 1921, p. lxxxiii, sec. 4), by its terms, forbids the appointment of any alien not eligible to citizenship as guardian of a minor with respect to property of the minor of a character which such alien cannot acquire for himself, that is to say, with respect to agricultural land belonging to such minor. Its effect is that a citizen of Japan who is the parent of a native-born child cannot be appointed guardian of the property of the child where that property consists entirely of agricultural land. This restriction is not put upon a citizen of any country whose citizens are eligible to citizenship here, nor upon any other class of residents of this state who are not citizens thereof. It is clearly a discrimination against citizens of Japan residing in this state.

Section 1 of article XIV of the constitution of the United States declares that no state shall "deny to any person within its jurisdiction the equal protection of the laws." We had occasion to consider this language in *Ex parte Kotta,* decided on September 12, 1921 (187 Cal. 27 [200 Pac. 957]). We there said that "the word 'person' as used in this amendment includes aliens," and quoting from *Yick Wo* v. *Hopkins,* 118 U. S, 396 [30 L. Ed. 220, 6 Sup. Ct. Rep. 1064, see, also, Rose's U. S. Notes], that it applies "without regard to any differences of race, of color, or of nationality," and that the guarantee of "the equal protection of the laws is a pledge of the protection of equal laws." These statements are also quoted and approved by the supreme court of the United States in *Truax* v. *Raich,* 239 U. S. 33 [Ann. Cas. 1917B, 283, L. R. A. 1916D, 545, 60 L. Ed. 131, 36 Sup. Ct. Rep. 7, see, also, Rose's U. S. Notes]. In *Barbier* v. *Connolly,* 113 U. S. 31 [28 L. Ed. 923, 5 Sup. Ct. Rep. 359, see, also, Rose's U. S. Notes], the court declared that this guarantee means that "equal protection and security should be given to all under like circumstances in the enjoyment of their personal and civil rights." It needs no argument to demonstrate the proposition that a law which gives to one person the right or privilege of becoming the guardian of his child and withholds it from another, both being alike competent in all respects, is not equal as between the two persons. The person from whom it is withheld is not in such a case accorded the protection of equal laws. In this respect the initiative act of 1920

is clearly a violation by this state of the guarantee contained in the fourteenth amendment, that no state shall deny to any person the equal protection of its laws.

[13] It cannot be successfully contended that the law may be declared valid in this respect on the ground that persons who are ineligible to citizenship under the laws of the United States form, by reason of that fact alone, a class by themselves, for which the state may enact peculiar legislation depriving them of rights or privileges which are accorded to others not of that class. The rule in regard to classification, peculiarly applicable to such an attempt, is that the classification "must be founded upon differences which are either defined by the constitution or natural, and which will suggest a reason which might rationally be held to justify the diversity in the legislation. It must not be arbitrary, for the mere purpose of classification, that legislation really local or *special* may seem to be general, but for the purpose of meeting different conditions naturally requiring different legislation." (Italics ours.) (*Darcy* v. *Mayor etc.*, 104 Cal. 645 [38 Pac. 500].) A law "makes an improper discrimination if it confers particular privileges or imposes peculiar restrictions or disabilities upon a class of persons arbitrarily selected from a larger number of persons, all of whom stand in the same relation to the privileges granted or burdens imposed, and between whom and the persons not so favored or burdened no reasonable distinction or substantial difference can be found justifying the inclusion of one and the exclusion of the other from such privileges or burdens. The difference on which the classification is based must be such as, in some reasonable degree, will account for or justify the peculiar legislation." (*Ex parte Miller*, 162 Cal. 698 [124 Pac. 430].) "While reasonable classification is permitted, without doing violence to the equal protection of the laws, such classification must be based upon some real and substantial distinction, having a reasonable and just relation to the things in respect to which such classification is imposed; and classification cannot be arbitrarily made without any substantial basis. Arbitrary selection, it has been said, cannot be justified by calling it classification." (*Southern R. Co.* v. *Greene*, 216 U. S. 417 [17 Ann. Cas.

1247, 54 L. Ed. 535, 30 Sup. Ct. Rep. 291, see, also, Rose's U. S. Notes].) The right or privilege of a father to be the guardian of his own minor child does not in any respect depend upon or arise out of his nationality or his eligibility to citizenship in this country. It has no relation thereto. Such privilege is no doubt as much prized by a Japanese resident of good character who is not a citizen of this country and cannot become such, as by any other father of like character who is a citizen or is eligible to become one. A law denying the privilege to one class and giving it to the other cannot be said to be a law justified by a classification based on a distinction which calls for such peculiar legislation. Such attempted classification does not relieve the act from the charge that it violates the fourteenth amendment.

[14] 3. The foregoing observations apply with equal force to the proposition that the act of 1920, taken in connection with section 1751 of the Code of Civil Procedure, denies to the child, Tetsubumi Yano, the privileges guaranteed to her by the fourteenth amendment to the constitution of the United States and by section 21, article I, of the constitution of this state. Section 21 declares that no *citizen* or class of *citizens* shall "be granted privileges or immunities which, upon the same terms, shall not be granted to all citizens." The child is a native citizen of the United States and of the state of California. Nothing can be denied to her because of her race or color that is not denied to all citizens regardless of race or color. Any privilege that is given generally to citizens of other races must also be given to her upon the same terms, and her race cannot be considered as a factor in the problem, or as a cause for denial thereof to her. The effect of the two laws would be that all native minor children possessed of agricultural land in this state, whose parents are aliens residing in this state and eligible to citizenship, would have the privilege of having their father or mother appointed guardian of that part of their estate, while, on the other hand, all native-born minors who are possessed of agricultural land in this state, whose parents are aliens and reside here, but are ineligible to citizenship, if a guardianship of such land is necessary or convenient, would be compelled to have strangers as such guardians. Furthermore, while a native Cali-

fornia child of alien Japanese parents, if over fourteen years of age, could nominate its own father as the guardian of its personal property or of its real property leased for purposes of trade or residence solely (Code Civ. Proc., sec. 1748), it must nominate some stranger as guardian of any farming land it may own. No such burdensome disability is imposed upon any native-born child whose parents are citizens or eligible to citizenship. All such discriminations are forbidden by the constitutional provisions above mentioned.

[15]  It is argued on behalf of respondent that the object of the law is to prevent evasions of the law forbidding aliens ineligible to citizenship to acquire, possess, or enjoy agricultural land, that the only class doing so is composed exclusively of aliens who cause land to be vested in their own minor children, with a view of being appointed guardian of the estate of such children, and that it is permissible for the state to regard the persons who are producing the evil which it desires to prevent, as a class by themselves and to enact such measures operating only upon that class as may be necessary to accomplish the desired object, as has been pointed out in *Patsone* v. *Pennsylvania,* 232 U. S. 138 [58 L. Ed. 539, 34 Sup. Ct. Rep. 281, see, also, Rose's U. S. Notes], and *Ex parte Spencer,* 149 Cal. 401 [117 Am. St. Rep. 137, 9 Ann. Cas. 1105, 86 Pac. 896]. But even in such case, as has been shown, the differences on which the classification is based must suggest a reason for the peculiar legislation and the legislation must be such as will have some tendency to remove the evil intended to be prevented. The appointment as guardian would not enable such parents to acquire, possess, or enjoy agricultural land, and therefore their ineligibility to such appointment could not prevent their so doing. A guardian neither acquires, possesses, or enjoys the property belonging to the ward, in any accurate or legal meaning of those terms. At most, he merely has, for some purposes, the control of the property, but the control is not in his own right and does not inure to his benefit. He controls it as trustee only, and is held to strict accountability to the child for all the benefits accruing from the use of it. He must render such accounts annually, or oftener, if required by the court.

(Code Civ. Proc., secs. 1773, 1774.)    He must hold all the receipts from the farming operations as the property of the native-born child, and must use so much of it for the support and education of the child as may be necessary, and no more, and must safely invest the remainder as the property of the child and for its sole use and benefit.    In all of his acts as guardian he is under the supervision and control of the superior court of the county.    His compensation is limited to the reasonable value of his services and is to be fixed by that court.    The use is in the child, not in the guardian.    When the child becomes of age the control of the guardian immediately ceases.    If the child should die the control would pass forthwith to its heirs, and the alien parent, in that event, would not even inherit the property or any part thereof.    It seems plain that since the alien parent could not by this means evade the operation of the law, nor acquire, possess, or enjoy agricultural land, the law cannot be upheld on the ground that such persons constitute a class, and the only class, who attempt to evade the law forbidding alien ownership.    They could not by the use of such guardianship enjoy the rights of ownership.    The classification is, therefore, clearly arbitrary and does not "suggest a reason which might rationally be held to justify" the peculiar legislation addressed to the class, as is said in *Darcy* v. *Mayor etc., supra.*

The object sought to be attained by these statutory provisions, that is, to discourage the coming of Japanese into this state, may be a proper one, and may be even desirable for the promotion of the welfare and progress of the state. The court can only consider its validity under the limitations of the constitution.    A similar object prompted the adoption of the anti-Chinese provisions of the constitution of 1879, which, so far as they were effectual, were declared invalid by the federal courts.    This entire question is international in character and is a matter properly to be disposed of by the federal government.    Appeal for its adjustment should be made to Congress, rather than to attempt to accomplish it by discriminatory legislative measures of the state.

Our conclusion is that the provisions of the Initiative Act of 1920 forbidding the appointment of an alien resident, ineligible to citizenship, as guardian of the farming land

of his native-born child, and authorizing the removal of such parent, if previously appointed as such guardian, are invalid.

The order appealed from is reversed.

Shaw, C. J., Sloan, J., Waste, J., Shurtleff, J., Wilbur, J., and Lennon, J., concur.

LAWLOR, J., Dissenting.—I dissent.

I cannot agree with the conclusion announced with respect to the constitutionality of that portion of the alien land law which provides that no alien ineligible to citizenship may be appointed guardian of "that portion of the estate of a minor which consists of property which such alien . . . is inhibited from acquiring, possessing, enjoying or transferring by reason of the provisions of this act." The plain object of this provision was to deny the right to be such guardians to aliens who were made ineligible to hold agricultural land under the alien land law, so as to prevent an evasion of the terms of that act, of which this provision is a part. The first question presented in considering its constitutionality, it being conceded it does not violate the terms of the treaty with Japan, is whether it denies to such aliens the equal protection of the laws. In *Terrace* v. *Thompson*, 274 Fed. 841, 843, it is said: "A state may lawfully prohibit aliens acquiring land within its boundaries, if there is no treaty to the contrary. (*Chirac* v. *Chirac*, 2 Wheat. 259, 272 [4 L. Ed. 234, see, also, Rose's U. S. Notes] ; *Hauenstein* v. *Lynham*, 100 U. S. 483, 484 [25 L. Ed. 628] ; *De Vaughn* v. *Hutchinson*, 165 U. S. 566, 570 [41 L. Ed. 827, 17 Sup. Ct. Rep. 461] ; *Clarke* v. *Clarke*, 178 U. S. 186 [44 L. Ed. 1028, 20 Sup. Ct. Rep. 873] ; *Blythe* v. *Hinckley*, 180 U. S. 333 [45 L. Ed. 557, 21 Sup. Ct. Rep. 390].)'' The several cases cited in the prevailing opinion state the general rules relating to classification for purposes of legislation. In this instance the aliens coming within the inhibition of the legislation seek by indirection to control agricultural land which the alien land law, the validity of which is not questioned by the majority opinion, denies them the right to own. To hold that under the federal guarantee of equal protection of the laws, the state is powerless to prevent the circumvention

of a law it had the authority to enact, is in effect to declare that it cannot, by an exercise of its sovereign will, effectuate the purpose of the original legislation—to prevent its agricultural land from passing under the control of such aliens. I am not prepared to assent to such a conclusion. It seems clear to me that the state, having the power to enact the original law directed at these aliens, may classify them in supplemental legislation, the object of which is to make the parent legislation effective.

The statute held constitutional in *Patsone* v. *Pennsylvania,* 232 U. S. 138 [58 L. Ed. 539, 34 Sup. Ct. Rep. 281, see, also, Rose's U. S. Notes], made it unlawful for any unnaturalized foreign-born resident to kill any wild bird or animal except in defense of person or property, and "to that end" made it unlawful for any such person to own or be possessed of a shotgun or rifle, with a penalty of twenty-five dollars and a forfeiture of the gun. In that case the supreme court of the United States, speaking through Mr. Justice Holmes, said: "But we start with the general consideration that a state may classify with reference to the evil to be prevented, and that if the class discriminated against is or reasonably might be considered to define those from whom the evil mainly is to be feared, it properly may be picked out. A lack of abstract symmetry does not matter. The question is a practical one dependent upon experience. . . . The question therefore narrows itself to whether this court can say that the legislature of Pennsylvania was not warranted in assuming as its premise for the law that resident unnaturalized aliens were the peculiar source of the evil that it desired to prevent." It appears from that case that unnaturalized foreign-born residents were the chief slaughterers of wild birds and animals, and to prevent violations of a statute which made the killing of the game unlawful, such persons were denied the right to own property consisting of certain kinds of firearms which they might use to kill game. Here, the object is not to prevent a violation of a statute, but to prevent an evasion of it, for, while it is true the alien parent does not acquire title to the land, as a practical matter he does secure control of it in his capacity as guardian. The only persons who would evade such a statute are those against whom it is directed, namely, aliens ineligible to citizenship—

a definite class of the population, as between the members of which the act makes no discrimination. To prevent the circumvention of the law, such aliens are denied the right to be guardians of these estates, by use of which form of guardianship they would control them. I perceive no distinction in principle between the two cases.

Viewed purely as a question of guardianship, it may be true, as stated in the prevailing opinion, that "The right or privilege of a father to be the guardian of his own minor child does not in any respect depend upon or arise out of his nationality or his eligibility to citizenship in this country. It has no relation thereto." But when it is considered that out of all the persons who may become guardians of this class of property these aliens alone seek to be appointed as such with the definite object of evading the alien land law, there is a relation established between them and the right to be guardians which places them in a distinct class with reference to that subject.

The means adopted to accomplish the objects and purposes of the alien land law are not unreasonable. As pointed out in the main opinion, matters of guardianship are within the control of the legislature. The qualification and competency of guardians are, therefore, subject to statutory change. This provision is the latest expression of the legislative will on the subject of eligibility to guardianship. It is an additional qualification of the rule that a parent, or person nominated by a minor over fourteen years of age, may be appointed as guardian. (Sec. 1751, Code Civ. Proc.) A parent who is incompetent has no right to be appointed guardian of his child. In the case at bar, it was found by the trial court and the petitioner himself admitted that the land was transferred to the minor and that petitioner is seeking to be appointed guardian solely because under the alien land law he could not own the land himself. It is urged that one who avowedly seeks to circumvent a law of the state and defeat its plain purpose is an unfit person to be a guardian. However that may be, this statute expressly renders ineligible to be guardians of a certain class of property in the estates of minors those in the class of whom petitioner is one. It does not interfere with the right of a natural parent to be the guardian of the person of the minor or of that portion of its estate which the guardian

himself might lawfully acquire and enjoy. Such a regulation is clearly within the legislative power of the state.

Considered from this viewpoint, the rights of the minor are not infringed by this provision. It cannot be questioned that this minor has, under section 21, article I, of the constitution of this state, the same rights as any other native-born citizen. Neither can it be questioned that the title to the land has vested in her. But no child has a right to have its parent appointed its guardian if the parent is incompetent to discharge the duties of guardianship. By the provision in question an additional class of persons are rendered incompetent to be guardians of property of a particular character. A minor has no more right to have a parent declared by law to be ineligible appointed as guardian than such parent would have to be the guardian. The rights of each are subject to statutory regulation and in such a case as this neither can have more ground for complaint than if the parent were disqualified because of incompetency to discharge the duties of the office. This legislation applies to all minors whatever the nationality of their parents may be, and it applies whether the person sought to be appointed guardian is the parent of the minor or is a stranger.

It follows that since it was adopted to prevent the evasion of the alien land law by the class of persons directly affected thereby, it was proper to classify them for the purposes of this provision, and since the means used are not unreasonable, the enactment should be upheld as aiding the enforcement of the alien land law in spirit as well as in letter.

Rehearing denied.

All the Justices concurred, except Lawlor, J., who dissented.

Waste, J., was absent and Richards, J., *pro tem.*, was acting.