## McMONAGLE v. McGLINN.

(Circuit Court, N. D. California. January 10, 1898.)

### No. 12,126.

1. STATUTE OF LIMITATIONS—TRUSTS—FRAUD OF TRUSTEE.

M., as attorney in fact for a devisee residing in a distant city, received her share of an estate, remitted a portion, and retained the remainder, which he invested in real estate, took the title in his own name, and afterwards conveyed it to his wife. The devisee permitted him to retain her property at his request, and upon his representations that he could thereby obtain for her a greater profit. He frequently told her that others were fraudulently trying to obtain her money, but warned her not to speak of it, and to seek no advice, and assured her of the security of her funds. In consequence of his warning, and reposing great trust in M., she sought no advice, and, being unable to read or write, made no inquiry concerning her property. *Held*, that no express trust was created, and an action to recover the trust property, brought against the wife of M. after his death, and 12 years after he received the funds, was barred by Code Civ. Proc. § 343, requiring actions based upon constructive trusts to be brought within 4 years.

2. SAME—LACHES.

*Held*, further, that since the cestui que trust failed to inquire what disposition had been made of her funds when informed by the trustee that efforts were being made to defraud him of them, she did not exercise proper diligence, and could not, therefore, claim exemption from the statute of limitation on the ground that the trustee concealed his fraud.

Fox, Kellog & Gray, for complainant.
Timothy J. Lyons, for defendant.

MORROW, Circuit Judge. This is a bill in equity, as amended by leave of court, instituted by Susan McMonagle, sometimes known as Susan Monagle, against Mary McGlinn, sometimes known as Mary McGlynn. The suit is brought to recover the sum of $12,757.12, alleged to be trust funds, and that certain real estate owned by the defendant be charged with the trust. A demurrer to the original bill was sustained. The bill was then amended, with a view of explaining the long delay of complainant in bringing suit. The allegations of the bill show that the complainant, at all the times mentioned in the bill, was a resident of Providence, state of Rhode Island,

and that she is an alien, being a subject of the queen of Great Britain and Ireland; that the defendant is a citizen of the state of California, and a resident of the city and county of San Francisco, in said state. The bill shows further that one Hugh McGlinn, sometimes known as Hugh McGlynn, died, on December 9, 1879, at the city and county of San Francisco, state of California, leaving a last will and testament, whereby he devised to the complainant one-half of all the property which he possessed in the state of California; that thereafter, and on or about August 6, 1882, Patrick McGlinn falsely and fraudulently represented to the complainant that it was necessary that he should act as her attorney in fact, in order that she might obtain her distributive share of the estate; that the complainant reposed special and full confidence and trust in said Patrick McGlinn, and, being herself ignorant of the law and fact, and unable to read or write, the said Patrick McGlinn, through and by means of such false and fraudulent representations, obtained from the complainant a power of attorney to draw and receive for her and in her name her distributive share of said estate; that thereafter, and on December 22, 1882, after due and regular proceedings in that behalf had in the superior court in and for the city and county of San Francisco, the said court, by its order and decree, made and entered in the matter of the estate of Hugh McGlinn, deceased, admitted the said will to probate, and appointed said Patrick McGlinn and R. H. Lloyd, of the city and county of San Francisco, executors thereof; that the said Patrick McGlinn, as the attorney in fact of the complainant, under and by virtue of the said power of attorney received for the complainant from the executors her share in the estate, amounting to $14,757.12; that he never remitted nor paid over to the complainant, nor to any person for her, any portion thereof, except the sum of $2,000; that the balance of $12,757.12 remained in the possession and under the control of said Patrick McGlinn as such attorney in fact of the complainant, and in trust for her, until used and invested by him as her attorney in fact, as thereafter set forth. Then follow divers allegations setting forth the investments made by said Patrick McGlinn with the money of complainant; that the investments were made in certain pieces of real estate, the title to which was taken by said Patrick McGlinn in his own name, and that subsequently it was transferred to his wife for an alleged consideration of love and affection, but, as a matter of fact, without any good or sufficient consideration, etc.; that his wife took said title with notice of the fact that it was purchased with trust funds of the complainant. The bill further avers that the complainant is uneducated, and can neither read nor write; that her said moneys, amounting to the aforesaid sum, were left in the hands of said Patrick McGlinn, in trust as aforesaid, at his own instance and request, the complainant reposing special confidence in his honesty and integrity, he representing to the complainant that he could make the same more productive, and secure for her greater increase, profit, and return thereon in San Francisco than she could do at her home in the East; that said Patrick McGlinn repeatedly told the complainant that certain persons were trying to fraudulently obtain posses-

sion of the money belonging to the complainant, and repeatedly warned the complainant not to speak to any one about matters connected with her estate, or of the relations existing between them, as advantage might thereby be taken of her; that whenever he could possibly do so he would come to Providence, and see her, and that in the meantime she need have no fear as to the security of her funds; that the complainant placed implicit trust and confidence in the statements and promises of the said Patrick McGlinn, and, in consequence of his warnings as aforesaid, she refrained from seeking advice or information in regard to her said property, she being unable to read or write herself. It is further alleged that the complainant never knew of the manner in which Patrick McGlinn had invested the said moneys, or the accumulations thereof, until long after the death of said Patrick McGlinn. and in the year 1893, when she, having learned of his death, instituted inquiry as to the manner of investment of her said trust fund, and then and during the said year 1893 for the first time became informed or learned of the manner in which said fund had been invested. It is averred, finally, that the said sum of $12,757.12 was at all times a trust fund, as thereinbefore stated, and concerning which said Mary McGlinn, defendant herein, stood and stands in no better position than the said Patrick McGlinn, for that she received said legal title, and the benefit of said use of trust funds, without consideration, and with full knowledge that the said moneys of the complainant, so held in trust by the said Patrick McGlinn, had been invested in the real property aforesaid; that the retention thereof, and the acts of the defendant in relation thereto, are contrary to equity and good conscience, and tend to the manifest injury and oppression of the complainant in the premises, etc. To this amended bill a demurrer is interposed on several grounds, chief among which are (1) want of equity; (2) the bar of the statute of limitations of this state; (3) laches. The other objections are simply to the form of the bill.

The determination of the question of the statute of limitations and of laches depends upon the view taken of the allegations of the bill. It is contended, by counsel for complainant, that the bill shows an express trust between the complainant and Patrick McGlinn, which continued between them at least until his death; while it is claimed, by counsel for defendant, that the allegations simply make out a case of implied or constructive trust. The bill does not show exactly when the alleged express trust commenced, but, if it existed at all, it would seem, from the allegations of the bill, to have had its incipiency at some time after McGlinn, acting as attorney in fact for the complainant, under the power of attorney set out in the bill, had collected her distributive share of the estate, which would be some time in the latter part of 1882 or the first part of 1883. The first investment and use made of the trust moneys is alleged to have been on or about the 28th day of June, 1883. The bill alleges that the complainant did not become aware or discover the manner in which her trust funds had become invested until 1893. The original bill was filed October, 1895. A period of some 12 or 13 years had, therefore, elapsed when the bill was filed. If the bill charges an express

trust, the statutes of limitation do not apply. 27 Am. & Eng. Enc. Law, pp. 100–106, and cases there cited. If, however, it charges a constructive trust, the statutes would apply. 2 Wood, Lim. §§ 200, 215, pp. 504, 533, and cases there cited; Beaubien v. Beaubien, 23 How. 190; Hecht v. Slaney, 72 Cal. 363, 14 Pac. 88. Do the averments of the bill state an express trust between the complainant and Patrick McGlinn? In my opinion, they do not. An express trust can be created only by an agreement, express or implied, between the parties to the trust. 2 Pom. Eq. Jur. §§ 1008–1010. This author says, at page 1493 of volume 2 (2d Ed.) of his work on Equity Jurisprudence:

"The declaration of trust, whether written or oral, must be reasonably certain in its material terms; and this requisite of certainty includes the subject-matter or property embraced within the trust, the beneficiaries or persons in whose behalf it is created, the nature and quantity of interests which they are to have, and the manner in which the trust is to be performed. If the language is so vague, general, or equivocal that any of these necessary elements of the trust is left in real uncertainty, then the trust must fail."

No agreement is set out in the bill purporting to create an express trust of the money in question. We are at a total loss to conceive what the terms of the trust were. We do not know how the money was to be invested; whether it was agreed that the deceased, Patrick McGlinn, should take the title to the real property in his own name; nor, in fact, any of the terms of the trust. To be sure, there is the general allegation that Patrick McGlinn held the money in trust for the complainant. But this is a mere conclusion of law, and is bad pleading. 18 Am. & Eng. Enc. Law, p. 502. Section 2221 of the Civil Code of California provides that:

"A voluntary trust is created, as to the trustor and beneficiary, by any words or acts of the trustor indicating, with reasonable certainty: (1) An intention on the part of the trustor to create a trust; and (2) the subject, purpose, and beneficiary of the trust."

Section 2222 of the same Code provides that:

"A voluntary trust is created, as to the trustee, by any words or acts of his indicating, with reasonable certainty: (1) His acceptance of the trust, or his acknowledgment, made upon sufficient consideration, of its existence; and, (2) the subject, purpose, and beneficiary of the trust."

See, also, 1 Perry, Trusts (3d Ed.) § 86; 2 Pom. Eq. Jur. §§ 1008, 1016.

It cannot be said that the averments of the bill indicate with reasonable certainty that it was the intention of the trustor (the complainant) on the one hand and of the trustee (Patrick McGlinn, deceased) on the other hand to create a trust, and the subject, purpose, and beneficiary of the trust. The bill is uncertain, indefinite, and ambiguous in these respects. Its allegations seem to be more consistent with what is termed a constructive trust; that is, one implied by operation of law. 2 Pom. Eq. Jur. § 1044 et seq.; Civ. Code, § 2224. The averments of the bill cannot support both an express and a constructive trust. It must set out one or the other clearly and specifically. An express trust cannot exist where the trust is impressed by operation of law. It being determined that the trust set out in the bill is an implied or constructive, and not

an express, trust, it follows that the statute of limitation applies. See authorities cited supra. The limitation applicable in the case of an implied or constructive trust in this state is four years. Code Civ. Proc. § 343. As this suit was not brought for at least 12 years, it must be deemed barred.

But it is strenuously contended by counsel for the complainant that, if the bill be considered as stating a case of constructive trust, it contains allegations which show that there was a fraudulent concealment of the cause of action until 1893, and within four years of the limitation provided by section 343, supra. It is claimed that these allegations show that the complainant did not know of the fraud of the deceased, Patrick McGlinn, and the violation of his trust, until after his death, in 1893; that any inquiry or discovery by her was prevented by the false representations made to her by the deceased during his lifetime; and that it was not until after his death that she discovered his fraudulent conduct, and then brought suit within the statutory limitation from the time of discovery. While statutes of limitation apply to constructive trusts, still the doctrine is well established that, where fraud or a violation of the trust is concealed, the statute will not apply, provided the injured party has not been guilty of laches in instituting inquiry, and has been reasonably diligent in discovering the fraud or breach of the trust. The concealment of the fraud is considered rather as an aggravation of the offense. Badger v. Badger, 2 Wall. 93; Michoud v. Girod, 4 How. 503. As stated by Mr. Justice Clifford, sitting as circuit justice, in James v. Atlantic Delaine Co., 3 Cliff. 614, Fed. Cas. No. 7,177:

"When the fraud charged and proved consists of misrepresentations and concealments, courts of equity are reluctant to apply the rule at all, unless it appears that the rights of innocent third parties will be injuriously affected if that defense is overruled."

But a party, to bring himself within the qualification of the rule, must show clearly, by his bill, that he has been reasonably diligent in looking after his rights, and has not been guilty of laches. What the averments should be are thus stated by Mr. Justice Grier in Badger v. Badger, supra:

"The party who makes such an appeal should set forth in his bill specifically what were the impediments to an earlier prosecution of his claim, how he came to be so long ignorant of his rights, and the means used by the respondent to fraudulently keep him in ignorance, and how and when he first came to a knowledge of the matters alleged in the bill; otherwise the chancellor may justly refuse to consider his case, on his own showing, without inquiring whether there is a demurrer or formal plea of the statute of limitations contained in the answer."

This rule of pleading has been repeatedly affirmed in other cases, and the complainant is held to stringent rules of pleading. Stearns v. Page, 7 How. 819, 829; Moore v. Greene, 19 How. 69, 72; Beaubien v. Beaubien, 23 How. 190; Badger v. Badger, supra; Wood v. Carpenter, 101 U. S. 141; Lansdale v. Smith, 106 U. S. 391, 1 Sup. Ct. 350; Speidel v. Henrici, 120 U. S. 377, 7 Sup. Ct. 610; Richards v. Mackall, 124 U. S. 183, 8 Sup. Ct. 437; Kilbourn v. Sunderland, 130 U. S. 505, 9 Sup. Ct. 594; Hammond v. Hopkins, 143 U. S. 224,

12 Sup. Ct. 418. The complainant, by amendments to her bill, attempts to bring herself within the rule of pleading as stated above. She avers, substantially, that Patrick McGlinn repeatedly told her that certain persons were trying fraudulently to obtain possession of the money belonging to her, and that he repeatedly warned her not to speak to any one about matters connected with her estate or of the relations existing between them, as advantage might thereby be taken of her; that whenever he could possibly do so he would come to Providence, and see her, and that in the meantime she need have no fear as to the security of her funds; that the complainant placed implicit trust and confidence in the statements and promises of the said Patrick McGlinn, and in consequence of his warning as aforesaid she refrained from seeking advice or information in regard to her property, she being unable to read or write herself. I do not think that the showing made is sufficient to explain the long delay of 12 years. It does not appear that she ever instituted inquiries as to what Patrick McGlinn had done with her money. She permitted 10 years to elapse without satisfying herself that McGlinn was acting honestly with the large sum she permitted him to retain as her financial agent; and this in the face of his statements to her that certain persons were trying to defraud her. In the case of Wood v. Carpenter, supra, where it was sought to explain a delay in bringing suit by alleging a fraudulent concealment of the cause of action, Mr. Justice Swayne, delivering the opinion of the court, said:

"It will be observed, also, that there is no averment that during the long period over which the transactions referred to extended the plaintiff ever made or caused to be made the slightest inquiry in relation to either of them. The judgments confessed were of record, and he knew it. It could not have been difficult to ascertain, if the facts were so, that they were shams. The conveyances to Alvin and Keller were also on record in the proper offices. If they were in trust for the defendant, as alleged, proper diligence could not have failed to find a clew in every case that would have led to evidence not to be resisted. With the strongest motives to action, the plaintiff was supine. If underlying frauds existed, as he alleges, he did nothing to unearth them. It was his duty to make the effort."

After referring to and discussing a number of authorities, the learned justice concludes as follows:

"A wide and careful survey of the authorities leads to these results: The fraud and deceit which enable the offender to do the wrong may precede its perpetration. The length of time is not material, provided there is the relation of design and its consummation. Concealment by mere silence is not enough. There must be some trick or contrivance intended to exclude suspicion and prevent inquiry. There must be reasonable diligence; and the means of knowledge are the same thing, in effect, as knowledge itself. The circumstances of the discovery must be fully stated and proved, and the delay which has occurred must be shown to be consistent with the requisite diligence."

It would serve no useful purpose to refer and discuss the many authorities cited by both sides on this question of fraudulent concealment of the cause of action, and as to what constitutes diligence in bringing suit. I am of the opinion that the complainant, from the allegations of her bill as amended, failed to exercise that diligence with respect to the protection and enforcement of her rights which courts of equity invariably require of litigants seeking its aid. The allegations that she had great confidence in said Patrick Mc-

Glinn, and that he warned her not to make inquiries, do not satis-
factorily explain and account for the long delay.   The fact; also,
that Patrick McGlinn is dead, is a circumstance which appeals very
strongly to a court of equity in passing upon the question of laches.
As was well said by Mr. Chief Justice Fuller in Hammond v. Hop-
kins, 143 U. S. 224, 274, 12 Sup. Ct. 435:

> "In all cases where actual fraud is not made out, but the imputation rests upon
> conjecture, where the seal of death has closed the lips of those whose character
> is involved, and lapse of time has impaired the recollection of transactions and
> obscured their details, the welfare of society demands the rigid enforcement of
> the rule of diligence.   The hourglass must supply the ravage of the scythe, and
> those who have slept upon their rights must be remitted to the repose from
> which they should not have been aroused."

I am of the opinion that the demurrer is well taken.   The bill
will be dismissed, and it is so ordered.