1020

EDWARD H. HELLER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 94794, 94795.   Promulgated May 1, 1940.

*Sidney M. Ehrman, Esq.,* and *Lloyd W. Dinkelspiel, Esq.,* for the petitioner.

*Harry R. Horrow, Esq.,* and *H. G. Potthoff, Esq.,* for the respondent.

OPINION.

DISNEY: Did respondent err in including in petitioner's income the amounts of income earned in the three accounts set up for his children? The petitioner contends that the accounts contained only gifts, from him and other relatives of the children; respondent, that no present gifts were made or completed, but, in the alternative, that if made they were by way of trust, leaving the petitioner liable for the income thereof. Petitioner denies that any trust was intended or made, with the exception of the $10,000 in cash and bonds, contributed by his mother, and $1,000 by petitioner, to Emanuel on August 17, 1926, by declaration of trust then set up.

Our first question is whether petitioner with others made present gifts to the children. Respondent urges perhaps most particularly the inability of the children under California law to be donees when they had no legal guardian, and the reservation of management by the petitioner.

The evidence here is uncontradicted that there was a custom in petitioner's family to make gifts upon such occasions as births and birthdays and other occasions. This is demonstrated by the gifts to each child at birth and by the fact that the contributions were by the grandmother and great-aunts as well as the father and mother of the

children. A birthday present is not ordinarily, we think, thought of as other than a present gift. No reservation or provision as to future enjoyment appears in the contributions from any of the female relatives. A mere provision for future enjoyment would, of course, not convert into a future interest if title vested immediately.

We can not agree with respondent's view that a minor in California, without legal guardian, can not be a donee. The cases cited merely demonstrate that a legal guardian is necessary for a minor's property to be disposed of, but not that the minor can not acquire by gift without a guardian. The latter does not follow from the former principle, which is of course sound. Certainly the general law is that a child, without a guardian, can be a donee. "The rule may be broadly stated that any person has the capacity to accept a gift where it is manifestly for his benefit." 28 C. J. 627, citing *McDonogh* v. *Murdock*, 15 How. 367. There is a presumption of validity of a gift to a child. *Towson* v. *Moore*, 173 U. S. 17; *Jenkins* v. *Pye*, 12 Pet. 241. "* * * such a deed or gift is natural and reasonable, and is sustained by the presumption that it was inspired by parental affection and devotion." *Sawyer* v. *White*, 122 Fed. 223. In *Haynes* v. *Gwin*, 209 S. W. 67, a gift to a child by the father the natural but not legal guardian, was upheld, his possession as natural guardian being held to be that of the infant. The law makes a clear distinction between delivery necessary between nonrelatives and between those living together in the same family. We decline to apply the same rule to a gift to a minor child from his father. Acceptance by a minor is presumed. *McKinnon* v. *First National Bank*, 82 So. 748 (wherein a father, not legal guardian, deposited moneys in a bank to the credit of his minor children); *Emil Frank*, 27 B. T. A. 1158 (involving brokerage accounts set up and managed by a father for minor children, and citing cases as to a father's right as natural guardian to exercise dominion over a gift to his minor child); *Donner* v. *Palmer*, 31 Cal. 500; *De Levillain* v. *Evans*, 39 Cal. 120; *Turner* v. *Turner*, 173 Cal. 782; 161 Pac. 980. We hold that petitioner's minor children were competent donees, though without legal guardians.

We think, too, that the requirements of delivery to a minor child were fulfilled. "While the mere fact that the donee is the child of the donor does not dispense with the necessity of a delivery in order to constitute a valid gift, the formal ceremony of a delivery is not absolutely necessary, but it is sufficient if it appear that the donor intended an actual gift at the time and evidenced his intention by some act which may be fairly construed into a delivery." 46 C. J. 1320. Practically the same language appears in *Allen Co.* v. *Edwards*, 154 Pac. 1066, a California case. In fact, it appears that

as to a considerable number of the contributions to the custodian accounts the delivery was sufficient even in the case of an adult, for certificates for the stocks involved appear often in the names of the different children. Placing stock in the name of the intended donee constitutes without more sufficient delivery, even though the donor actually retains the certificates in his possession. *Kathryn Lammerding*, 40 B. T. A. 589, and cases there cited and discussed, including *D. D. Malernee*, 31 B. T. A. 662, and *Marshall* v. *Commissioner*, 57 Fed. (2d) 633. Herein, to the extent of such stocks at least, there was sufficient delivery. ·

As to others not appearing in the name of the children, and cash and other property, we believe petitioner retained only such management and control as is reasonably consistent with the position and duty of a father as natural guardian to serve the interests of his children. There is no retention of any management or control by any of the contributors except the petitioner. As to the grandmother, mother and great-aunts, there is no indication at all of incompleteness of gift by reason of retention of control. Respondent on brief admits as to such funds, "Clearly with respect to the income from these funds the petitioner would not be taxable," and relies only upon the failure to segregate same from those contributed by the petitioner and presumption of correctness of his determination of deficiency; and petitioner does not ask segregation but argues merely that the contributions by the other relatives, in the same general manner as his own, indicate that all were gifts. Considering respondent's statement above quoted, and the evidence as to intention of all parties in making the contributions to the accounts, we think petitioner's contention is sound and should be sustained, as to all sums or properties deposited. Had petitioner died and a guardian been appointed for the children, such guardian, in our opinion, clearly could have held · the funds and properties in the accounts, against the executors of petitioner's estate had such executors made claim therefor.

Cases such as *Benjamin F. Wollman*, 31 B. T. A. 37, involving a short term trust and retention of "the substance of ownership" and control are not helpful, for such retention of control was inconsistent with passage of title, whereas here it is wholly consistent for a father to look after property for minor children. *William C. Rands*, 34 B. T. A. 1107, rests primarily upon the fact that only a right to dividends, and not corpus, was transferred. *Giselman* v. *Starr*, 40 Pac. 8 (Cal.), involved only a declaration, and no overt act to indicate gift, as the court held. *Lefrooth* v. *Prentice*, 259 Pac. 947 (Cal.), cited by respondent, involved attempted fraud upon creditors, and the proceeds of securities sold were used by the father for his own use. The

record here negatives completely such an element, for the petitioner neither used for his own use, nor for the maintenance, education, or support of the child any of the funds, and never borrowed from the accounts. It is true that by error some items were placed in the petitioner's name, but we think the record satisfactorily shows them to be error, and not intentional reservation for personal use by the petitioner.

Had the father, as the respondent argues, merely intended in the future to make gifts, his handling of these accounts was unnecessarily cumbrous, for, without the embarrassment occasioned when transfers were refused because of use of the expression "trustee", he could have handled the funds in his own individual name and later have made the gifts. Instead, he went to considerable trouble to segregate what he had bestowed upon the children, and treated it just as he treated what were clearly gifts from his mother and aunts. He testified positively as to his intent, and, though not conclusive, the affirmative and uncontradicted assertion of intent to make gifts can not but carry weight. His actions are consistent therewith. The result might be different if systematic, or even occasional, personal use of the funds or securities by petitioner appeared; but we here see a consistent segregation and preservation of the funds for the use of the children, and, except by error, only such control as a father would in any event exercise over a child's property, and similar to the control which in *Tracy v. Commissioner*, 70 Fed. (2d) 93, the court held to be not unusual between husband and wife. Such management is even more logically approved between father and minor children, particularly when starting from the date of birth. In addition, some of the contributions were accompanied by written statements, and written statements have often been held to obviate necessity for manual delivery. Petitioner, clearly, by using the descriptive term "trustee" and by separating the funds from his own, demonstrated intent to segregate the funds for the child particularly named in the custodian account. By such action and designation we think petitioner well evidenced a gift, when, as above seen, delivery to and acceptance by a minor child are not to be viewed in the same light as in case of an adult. In *Reginald Fincke*, 39 B. T. A. 510, a father opened a brokerage account for a minor daughter, managed and controlled it, and never converted any part of the funds for his personal use—all in a manner similar to the actions of the petitioner here. We held that the father was not taxable upon the profits from the account. After reviewing all of the evidence, we conclude and hold that petitioner made present gifts to each of his children.

The next question for determination is involved in respondent's alternative proposition that if there were gifts they were by way of

trust and that the income thereof was taxable to the petitioner under sections 166 and 167 of the Revenue Act of 1934. Respondent contends particularly that they are revocable trusts under section 166 because of section 2280, Civil Code of California, which makes voluntary trusts revocable in the absence of an express provision for irrevocability. The section is quoted by respondent, as follows:

2280. Revocation of trusts. Unless expressly made irrevocable by the instrument creating the trust, every voluntary trust shall be revocable by the trustor by writing filed with the trustee. When a voluntary trust is revoked by the trustor, the trustee shall transfer to the trustor its full title to the trust estate. Trusts created prior to the date when this act shall become a law shall not be affected thereby.

However, the last sentence in the statute, on the facts herein, eliminates the above statute from consideration, for the trusts, if any, for each of the three children were "created prior to the date when this act shall become a law." If trusts were set up at all, it was when the accounts were opened. The account for Emanuel was set up in 1926, that for Edward in 1929, that for Elizabeth on August 3, 1931. Section 2280, *supra*, was approved June 15, 1931, and therefore necessarily became effective after August 3, 1931, since under the Constitution of California, article IV, section 1, a legislative act does not go into effect until 90 days after adjournment of the legislature enacting it, and approval must be not later than 30 days after adjournment. Section 2280, prior to amendment by California Stats., 1931, p. 1955, read:

A trust cannot be revoked by the trustor after its acceptance, actual or presumed, by the trustee and beneficiaries, except by the consent of all the beneficiaries, unless the declaration of ᴛrust reserves a power of revocation to the trustor, and in that case the power must be strictly pursued.

The general law on the subject has been stated as follows:

Except as is otherwise provided by statute, although a trust is a voluntary one, in the absence of a power of revocation reserved, provided it is executed, it is irrevocable without the consent of the beneficiaries, or of all persons beneficially interested, as provided by statute. [65 C. J. 341.]

The above California statute, prior to amendment, has been construed to preclude revocation, except with the consent of the beneficiaries, of a trust not containing reservation of power of revocation. *Roberts* v. *Taylor*, 300 Fed. 257. Respondent suggests that the deposit by petitioner of moneys in bank constitutes a revocable trust. He and others deposited moneys which were invested in stocks and securities. "One holding corporate stock in trust for others could not, because of Civ. Code § 2280, by his own actions and at his own will, divest owners of such property of their interest therein." *Tillotson* v. *Findley*, 87 Cal. App. 654; 262 Pac. 438. If we assume, *arguendo*, that a trust was

created, plainly it was irrevocable. That the father might have secured possession of the trust res does not show revocability. Many trustor-trustees have no doubt violated trusts, which were none the less irrevocable.

It thus appears that, since acceptance by minors is presumed and none of the accounts reserves a power of revocation to the trustor, the accounts, even if they constituted trusts, were not revocable under the California statute then in force, and within the intendment of section 166 of the Revenue Act of 1934.

Aside from the effect of the above statute, however, we think no trusts were in fact created. Section 2221 of the Civil Code of California, provides:

*Voluntary trust, how created as to trustor.* Subject to the provisions of section eight hundred and fifty-two, a voluntary trust is created, as to the trustor and beneficiary, by any words or acts of the trustor, indicating with reasonable certainty:

1. An intention on the part of the trustor to create a trust, and,
2. The subject, purpose and beneficiary of the trust.

As to the first subsection of the statute, petitioner categorically denied intent to create a trust. Such denial, of course, is only evidential, yet his letters on March 14 and 15, 1933, to the Farmers & Merchants National Bank and Anglo-California National Bank, respectively, stating that no trust agreement had been set up for Emanuel or Edward, indicate that long prior to his testimony in this proceeding he was taking the same view.

Nor under the second subdivision can we find the petitioner, "by any words or acts of the trustor indicating with reasonable certainty: * * * The subject, purpose and beneficiary of the trust." The only words are the expression "trustee" used as to the accounts—contradicted as above set forth. The acts of petitioner are consistent with those of a father who is desirous of preserving his children's property. The beneficiaries of the trusts, in case of the death of the children or any of them, are nowhere indicated. No term is set. We think the reasonable certainty required is absent. *McMonagle* v. *McGlinn*, 85 Fed. 88, construing section 2221 above, and pointing out failure to prove the alleged trust. The word trustee alone is only evidential. *Morsman* v. *Commissioner*, 90 Fed. (2d) 18. Petitioner did not always use it, but sometimes referred to himself as guardian, although in fact he was not legal guardian, and explained the term as merely used for the purpose of distinguishing the accounts from his own. The necessity for some designation to distinguish from petitioner's personal accounts is plain. Petitioner's actions are consistent with his denial of trusts at the hearing and in 1933, and with the acts of a father

attending to the affairs of his minor children. We think that trusts, except the one set up for Emanuel, have been negatived.

Respondent also suggests that the petitioner may also be deemed taxable under section 167 of the Revenue Act of 1934, on the ground of control of trust income and power therefore to use it for the support and maintenance of his children. He cites *J. S. Pyeatt*, 39 B. T. A. 774. There the trustor was not trustee as here, if we assume a trust. The present situation is parallel to that in *Martin F. Tiernan, Trustee*, 37 B. T. A. 1048, where the trustor-father was also trustee, and we held, following *E. E. Black*, 36 B. T. A. 346, that section 167 did not apply, where, though the trustee might in his discretion apply income to discharge his duty to support, educate, and maintain his children, the income was not so used—precisely as is the case herein. The situation and conclusion were essentially the same in *Alfred C. Berolzheimer*, 40 B. T. A. 645, where the father-trustor-trustee was held not taxable on income not distributed for or used for education, maintenance, and support. We hold that petitioner is not taxable upon the income of the accounts under section 167 of the Revenue Act of 1934.

By memorandum the respondent suggests the applicability of *Helvering* v. *Clifford*, 309 U. S. 331. That case was based squarely upon section 22 (a) of the Revenue Act of 1934, as is emphasized in *Helvering* v. *Wood*, 309 U. S. 344, wherein the Commissioner was not allowed to rely upon section 22 (a) after relying upon section 166. Aside from the fact that section 22 (a) has herein not been earlier relied upon, we think it plain that the *ratio decidendi* in the *Clifford* case does not apply here, for the reasons above outlined, in effect that the father's actions were consistent with the position and duty of a father to preserve the property of his child, donated by others as well as himself, and do not indicate retention of the benefits of ownership in himself. He could not retain ownership of that which was contributed by others. He treated what he had contributed in the same manner, all, we think, in a manner indicating recognition of the rights of the children, rather than claim of ownership in himself.

The trust as to Emanuel was in writing, entered into in 1929, revocable in the taxable year by the grantors by joint written instrument, or by the survivor. The mother of petitioner had no substantial interest adverse to him in the disposition of corpus or income. It is plain therefore that it comes within the ambit of section 166 of the Revenue Act of 1934, and that petitioner is taxable upon the income of at least that part of the trust corpus contributed by him. Questions to be answered are therefore, whether the trust extended only to the original $11,000 corpus, or also to the deposits

later made in account No. 3443, in which the proceeds of the $11,000 were placed, and whether, if the trust extends to such later deposits, petitioner is taxable upon the income of amounts not contributed by him. The declaration of trust specifically covers and describes $5,000 par value of bonds and $5,000 in cash, all contributed by petitioner's mother, and $1,000 contributed by petitioner, after which it provides that the trustee:

* * * shall manage and control all of said property herein before mentioned and specified and any and all property, real or personal, which may hereafter from time to time he declared *to be subject to the conditions of this agreement* and be delivered by the Trustors or either of them to the Trustee or to the Substitute Trustee, and declared *to be subject to the terms and conditions of this agreement,* and said Trustee, * * * may sell, exchange or otherwise dispose of any or all of said property * * * and shall invest and reinvest said trust property or the proceeds of the sale or other disposition of such property * * *. [Italics supplied.]

It is apparent from the above language that, unless both delivered to the trustee and declared subject to the conditions of the declaration of trust, later deposits do not become a part of the trust estate. Additional deposits were made in account No. 3443, but that account is not provided for by the declaration of trust. The account is in evidence, showing that the later deposits were not declared subject to the original trust agreement. Therefore the trust must be considered limited to the original $11,000 unless the later deposits in account No. 3443 become subject to the trust agreement, its terms and conditions, on the doctrine of commingling, as argued by the respondent. All moneys, securities, and property in each account were commingled, but the bank kept a ledger of all receipts and disbursements and a record of securities received, purchased, and sold in each account. Considering the specific character of the provision above quoted as to necessity for later additions being declared subject to the conditions of the agreement, the doctrine of commingling should be sparingly applied, for it is obvious that there was intent to limit the trust to the original allowance named and "specified" in the trust instrument, in the absence of express declaration. Delivery is particularly made insufficient as a reason for inclusion in the trust. Any addition must be delivered *and* declared subject to the trust. The expression as to declaration is repeated, apparently for emphasis. The parties have by stipulation agreed that the original $11,000 bonds and cash produced income of not more than $711 in 1934 and $1,185.77 in 1935. It thus appears that the original $11,000 was not so commingled with later deposits in account No. 3443 as to make the income undistinguishable or indivisible from the income of the later deposits.

We are here interested only in the income. The equitable doctrine of commingling protects a *cestui que* trust's right of recovery, and to the extent necessary treats the entire commingled property as subject to the trust, but this does not necessarily answer the question of fact here at hand, namely, whether income from the entire commingled funds was a part of the trust, so that the entire income is taxable to a trustee under a declaration as to a part of the corpus. Therefore, considering the definite nature of the provision as to the necessity of additions being specifically made a part of the trust by declaration, the absence of such declaration, the fact of divisibility, and our conclusion that accounts similar to account No. 3443, for the other two children, did not establish trusts, we conclude and hold that the express written trust extended only to the $11,000 in bonds and cash and the proceeds thereof.

Of what effect is the fact that each grantor contributed separate amounts? Petitioner urges that under *W. L. Honnold*, 30 B. T. A. 774, neither was a grantor as to the amount contributed by the other, so that petitioner was not taxable upon the income from the $10,000 contributed by his mother. Respondent upon brief says that as to the funds contributed to the agency accounts by others than petitioner, "Clearly, with respect to the income from these funds the petitioner would not be taxable", but points out that there has been no segregation, that respondent's determination is presumed to be correct, and therefore the entire income must be deemed taxable to the petitioner. The same admission and contention is applicable to the income from the $11,000 under the written declaration. We think that, under the wording of section 166, the petitioner's cotrustor had no interest in the $1,000 contributed by him, nor he in the $10,000 contributed by her. The statute speaks of power to revest "any part of the corpus", in the grantor, apparently not intending to make the corpus an indivisible whole, even though contributed by different trustors. The interest of each grantor in having the whole fund devoted to the purpose of the trust is not such an interest as to make each taxable upon the income of the whole. By the terms of the trust instrument in case of the child's death any part of the trust estate not already vested in him shall go to his issue; if none, then according to his will; and if none, then to his heirs at law, so that no part of the income can be said to be held or accumulated for future distribution to the grantors under section 167.

We hold that the grandmother had no substantial adverse interest in the disposition of the $1,000 and therefore that the trust to that extent was revocable by the petitioner, and that he is taxable upon the income thereof, but not upon the income from the $10,000. Though petitioner does not ask segregation, he nevertheless argues,

and, as above seen, respondent inferentially admits, that (except for the commingling of funds) he is not taxable upon his mother's contribution. For the reasons above discussed, we think that the failure to segregate is not here decisive. The maximum income of the $11,000 cash and securities or proceeds thereof is stipulated as $711 for 1934 and $1,185.77 for 1935. We hold that petitioner is taxable upon one-eleventh of these amounts.

*Decision will be entered under Rule 50.*