ALAN K. and PATSY J. MINOR, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Minor v. Commissioner
Docket No. 13037-88
United States Tax Court
T.C. Memo 1990-418; 1990 Tax Ct. Memo LEXIS 435; 60 T.C.M. (CCH) 435; T.C.M. (RIA) 90418; August 6, 1990, Filed *435 Decision will be entered under Rule 155. Alan K. Minor, pro se. John Keenan, for the respondent. PARR, Judge. PARR
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined deficiencies in and additions to petitioners' joint Federal income tax returns as follows: Additions to Tax
Taxable Year
Deficiency
Sec. 6653(a)(1)
Sec. 6653(a)(2)
1982
$ 1,653.06
$  82.65
*
1983
3,383.20
169.16
*
1984
4,270.00
213.50
*
1985
614.90
30.74
*
Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended and in effect for the taxable years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure. After concessions, the issues for decision are: (1) whether the interest earned during all years in issue on various joint savings accounts and certificates of deposit constitutes income to petitioners, rather than petitioners' children; (2) whether petitioners overstated their employee business expenses for all years in issue; (3) whether for taxable year 1984 petitioners are required to recapture $ 3,371 of the $ 5,000 they expensed in 1983 under section 179 on the 1984 Corvette; and (4) whether petitioners are *436 liable for additions to tax for negligence under section 6653(a)(1) and (2). FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits are incorporated herein. Petitioners resided in Gould, Ark., at the time they filed their petition in this Court. Unless otherwise indicated, references to petitioner are to Alan K. Minor. Interest Income
During 1982 and 1983 petitioners had two children, Alan Keith (herein "Keith") and Alandrea (herein "Alandrea"). In 1984 petitioners had a third child, Aaron (herein "Aaron"). [1] During 1982 petitioners deposited money in various savings account with First Federal Savings and Loan (herein "First Federal") and Worthen Bank and Trust (herein "Worthen Bank"), and purchased short-term certificates of deposit on behalf of Keith and Alandrea. The accounts and certificates were in petitioner's name and either Keith's or Alandrea's name, or both their names. Petitioner did not, however, name himself "trustee" on any of *437 the savings accounts or certificates of deposit. The accounts and certificates earned $ 4,653 in interest during 1982. Petitioners reported the interest on Keith's and Alandrea's 1982 income tax returns. In 1983 petitioner transferred some of the money from the savings accounts, and some of the funds from the certificates of deposit into the Worthen Ready-Fund Account (herein "Worthen account"). The Worthen account was opened in petitioner's and either Keith's or Alandrea's name, jointly. Petitioner did not name himself trustee of the account. The accounts and certificates together earned $ 3,146 in interest during 1983. Petitioners reported the interest on Keith's and Alandrea's 1983 income tax returns. On or about August 30, 1983, petitioner used $ 20,487.79 of the Worthen account funds to purchase 500 shares of Wal-Mart common stock on behalf of his minor children. However, he purchased the stock in his name, rather than the children's. During 1984 the accounts and certificates earned $ 1,579 in interest. Petitioners reported the interest on Keith's and Alandrea's 1984 income tax returns. On or about January 30, 1985, the Wal-Mart stock was sold for $ 22,625. Petitioners *438 reported the $ 2,137.21 long-term capital gain on their 1985 tax return, rather than reporting it on their children's returns. In February 1985 petitioner used the $ 22,625 stock proceeds, $ 10,000 of his own money, and the funds remaining in the Worthen account to purchase a one-year $ 40,000 certificate of deposit (number 417397); $ 30,000 on behalf of the three children, and $ 10,000 for petitioners. The certificate earned 9.25-percent interest annually, matured on February 6, 1986, and was registered to "Alan K. Minor or Alan Minor, II, or Alandrea Minor or Aaron Minor." In 1985 petitioners put their house in Little Rock, Ark., up for sale and built a $ 57,000 home in Gould, Ark. They borrowed $ 30,000 from the First State Bank of Gould to pay a portion of the estimated construction costs, and intended to use the proceeds from the sale of their house in Little Rock to pay the additional costs. However, their house in Little Rock had not sold by the time they needed additional funds. Accordingly, petitioner tried, without success, to obtain a home equity loan on the house in Little Rock from Worthen Bank. However, by May 10, 1985, Worthen Bank agreed to lend petitioner $ 30,900 *439 if the $ 40,000 certificate of deposit was provided as collateral. Petitioners agreed to that arrangement and thus obtained the loan. The $ 33,835.92 single payment Worthen note was due February 6, 1986. During 1985 the accounts and certificates together earned a total of $ 3,390.92 in interest. Petitioners reported the children's share of the interest on returns they filed on behalf of Keith and Alandrea. They did not file a return on behalf of Aaron. On February 6, 1986, the Worthen note was due. However, petitioners' house in Little Rock still had not sold, and they did not have the funds to pay the Worthen note. Accordingly, they borrowed $ 33,835.92 of the $ 40,000 certificate of deposit to pay off their personal loan. At all times petitioners intended to repay the amount borrowed from the children's portion, once their house in Little Rock sold. As of February 6, 1986, the $ 40,000 certificate of deposit had earned approximately $ 3,800 in interest, of which approximately $ 2,873 belonged to the children. On or about March 14, 1986, the house in Little Rock finally sold for $ 50,000. The buyers assumed a $ 22,000 first mortgage, paid $ 12,000 in cash, and petitioners *440 gave a $ 16,000 second mortgage, i.e., a $ 16,000 installment note, which required monthly payments of $ 171.94 for 15 years beginning April 1986. Petitioners assigned their interest in the second mortgage, i.e., the $ 16,000 installment note, to their children as partial repayment of the funds they borrowed. The mortgage assignment was not recorded with the Pulaski County Circuit Court Clerk until June 24, 1986. Additionally, on or around April 8, 1986, petitioners used the $ 12,000 cash from the sale, and $ 3,000 of their own money to purchase a 182-day, $ 15,000 certificate of deposit, number 427691, for their three children. The certificate was in the children's names and earned interest of 7.15 percent per annum. On or around May 19, 1986, petitioner deposited an additional $ 1,873 in the children's account at the First Federal Savings, account number 338559-8, of which he was custodian. All payments on the $ 16,000 mortgage were deposited in the children's account, number 338559-8, with First Federal Savings. Petitioners never "borrowed" any of the funds again, and never withdrew any of the money to pay expenses to support their children. The funds remained in the various *441 accounts for the benefit of the children. Car Expenses
At all relevant times petitioner worked as an Internal Revenue Agent in the Examination Division of the District Director's office in Little Rock, Ark. His job required him to travel frequently. As a consequence, he used his personal cars for business purposes. 1982
During 1982 petitioner used three cars for business purposes: a black 1980 Lincoln Mark VI (January 1 through September 28), a white 1980 Lincoln Mark VI [2] (September 29 through December 31), and a 1980 Corvette (January 20 through December 31). Petitioner used the black Lincoln 78 percent for business purposes during 1981. His business travel did not fluctuate during 1982. Therefore, he estimated that he used the black and white Lincolns approximately the same percentage of business use during 1982. Petitioner traveled a total of 14,912 business miles in those cars. On Form 2106, Employee Business Expenses, petitioner reported that (1) he used the 1980 Corvette 92.3 percent, and the 1980 Lincolns 73.4 percent for business *442 purposes; (2) the total actual gas, insurance, and repair expenses on the 1980 Corvette and the 1980 Lincolns were $ 2,267.87 and $ 2,515.29, respectively; (3) the total allowable expenses were $ 8,409.49 and $ 2,912.88 for the Corvette and the Lincolns; and (4) he drove the Corvette and 1980 Lincolns 6,880 and 6,711 business miles, respectively. Additionally, petitioner elected to expense $ 5,000 of the cost of the 1980 Corvette under section 179. Petitioners deducted $ 8,558.67 of the total expenses claimed on their Form 1040. 1983
During 1983 petitioner used four cars in connection with his business: a 1980 white Lincoln (January 1 through February 17), [3] a 1981 Lincoln (February 18 through December 31), a 1980 Corvette (January 1 through June 21), [4] and a 1984 Corvette (June 22 through December 31). Petitioner traveled a total of 13,339 business miles in those cars. On Form 2106 petitioner reported that (1) he used the Corvettes 92.6 percent, and the Lincolns 73.1 percent for business purposes; *443 (2) the total actual gas, insurance, and repair expenses on the Corvettes and the Lincolns were $ 1,988.69 and $ 1,907.79, respectively; (3) total allowable expenses on the Corvettes and the Lincolns were $ 10,119.53 and $ 2,595.59, respectively; and (4) he drove the Corvettes and Lincolns 7,384 and 4,823 business miles, respectively. Additionally, petitioner elected to expense $ 5,000 of the 1984 Corvette under section 179. Petitioners deducted $ 10,046.34 of the total expenses claimed on their Form 1040. 1984
During 1984 petitioner used a 1984 Corvette and a 1981 Lincoln for business purposes. Additionally, he traveled a total of 9,608 business miles in those cars. On Form 2106 petitioner reported that (1) he used the 1984 Corvette 92.6 percent, and the 1981 Lincoln 73.1 percent for business purposes; (2) the total actual gas, insurance, and repair expenses on the Corvette and the Lincoln were $ 2,284.11 and $ 959.64, respectively; (3) the total allowable expenses on the Corvette and Lincoln were $ 7,236.54 and $ 2,549.44, respectively; and (4) he drove the Corvette and the Lincoln 7,272 and 2,280 business miles, respectively. Petitioners deducted $ 7,804.30 [5] of the total expenses *444 claimed on their Form 1040. 1985
In 1985 petitioner continued to use the 1984 Corvette and the 1981 Lincoln for business purposes, and drove a total of 4,338 business miles. On Form 2106 petitioner reported that (1) he used the 1984 Corvette 20 percent, and the 1981 Lincoln 5 percent for business purposes; (2) the total actual gas, insurance, and repair expenses on the Corvette and Lincoln were $ 2,512 and $ 2,381, respectively; (3) total allowable expenses on the Corvette and Lincoln were $ 1,594.40 and $ 281.05, respectively; and (4) he drove the Corvette and the Lincoln 3,327 and 1,011 business miles, respectively. Petitioners deducted $ 985.09 of the total expenses claimed on their Form 1040. Notice of Deficiency
Respondent issued petitioners a notice of deficiency for their 1982, 1983, 1984, and 1985 taxable years. Respondent determined that the interest petitioners reported on the children's returns for each year in issue was properly taxable to petitioners, rather than the children. Additionally, respondent made adjustments to petitioner's employee business expenses as follows: (1) 1982 - Respondent *445 determined that petitioner used the 1980 Corvette 91 percent, the white 1980 Lincoln 52 percent, and the black 1980 Lincoln 47 percent for business purposes. Additionally, he disallowed a total of $ 1,251.22 of the insurance and repair expenses claimed, and increased the depreciation deductions by $ 466.84. (2) 1983 - Respondent determined (1) that petitioner used the 1980 Corvette 24 percent, the 1980 Lincoln 38 percent, the 1981 Lincoln 33 percent, and the 1984 Corvette 68 percent for business purposes; and (2) that petitioners had to recapture $ 3,750 of the $ 5,000 expensed in 1982 under section 179 for the 1980 Corvette. Additionally, he disallowed $ 712.57 of the total insurance and repair expenses claimed on the cars; [6] *446 (3) 1984 - Respondent determined (1) that petitioner used the 1984 Corvette 32 percent, and the 1981 Lincoln 16 percent for business purposes; and (2) that petitioner must recapture $ 3,750 of the benefit they derived from expensing the 1984 Corvette in 1983. Additionally, he disallowed $ 1,144.05 and $ 568.58 of the insurance and repair expenses claimed on the 1984 Corvette and the 1981 Lincoln, respectively. (4) 1985 -- Respondent determined (1) that petitioner used the 1984 Corvette 15 percent, and the 1981 Lincoln 7 percent for business purposes; (2) that petitioners expended a total of $ 2,565.50 on the 1984 Corvette, and $ 1,679.90 on the 1981 Lincoln. Additionally, he disallowed $ 31.55 of the depreciation claimed on the 1984 Corvette, and all the depreciation claimed on the 1981 Lincoln. Before trial, the parties agreed that (1) during 1984 the 1981 Lincoln and the 1984 Corvette were used 20 percent and 41 percent of the time, respectively, for business purposes; and (2) during 1985 the 1981 Lincoln and the 1984 Corvette were used 7 percent and 20 percent of the time, respectively, for business purposes. [7]
Respondent concedes that petitioners are not required to recapture the $ 3,750 benefit they received from expensing the 1980 Corvette in 1982. *447 Additionally, on brief respondent recomputed the recapture amount on the 1984 Corvette to be $ 3,371, rather than $ 3,750 as originally determined. OPINION The first issue for decision is whether petitioners or their children are taxable on the interest earned on the money deposited in the savings accounts, certificates of deposit, and the Worthen account. Petitioners bear the burden of proving respondent's determination is in error. Welch v. Helvering, 290 U.S. 111 (1933); Rule 142(a). Petitioners allege that they made a bona fide gift of the money to their children and, therefore, the interest earned on the money is taxable to the children. Respondent contends that petitioners never made a gift of money to the children, and, therefore, the interest earned on those funds belongs to petitioners. In determining whether a transfer of property is a gift, consideration must be given to the transferor's objective intent at the time the transfer occurred, Commissioner v. Duberstein, 363 U.S. 278, 286 (1960), and by the degree of control over the res the donor retains, Rodney v. Commissioner, 53 T.C. 287, 314 (1969). The donor may exert normal management control over the funds transferred *448 without indicating a lack of donative intent. Frank v. Commissioner, 27 B.T.A. 1158, 1163 (1933); Jolly's Motor Livery Co. v. Commissioner, T.C. Memo. 1957-231. Moreover, strict trust-like formalities are not required in order for interest income to be taxed to the children. Heller v. Commissioner, 41 B.T.A. 1020 (1940), affd. sub nom. Ehrman v. Commissioner, 120 F.2d 607 (9th Cir. 1941), cert. denied 314 U.S. 668 (1941); Jolly's Motor Livery Co. v. Commissioner, supra.However, if the transferor commingles the minors "gifted" funds with his own funds, and uses them for his own benefit, or to support the child, true donative intent may be lacking. See Heller v. Commissioner, 41 B.T.A at 1030-1031; Garris Investment Corp. v. Commissioner, T.C. Memo. 1982-38. Cf. Fincke v. Commissioner, 39 B.T.A. 510, 515 (1939). Petitioners make the following arguments to support their claim that a bona fide gift was made: (1) That even though petitioner purchased the stock in his name, he did it on behalf of the children in order to get a greater return than the certificate of deposit would produce. (2) That they reported the gain from the sale of the stock on their return, rather than the children's *449 returns, because "the IRS was taking the position that the money should have been reported by" petitioners. (3) That they reinvested the stock proceeds in their children's names. (4) That even though they used a portion of the children's funds to pay off their Worthen Bank debt, they exchanged or substituted other property of equal value in 1986, and therefore, the children retained the original gift. It is true that petitioners used some of the children's funds as collateral to secure a loan from the Worthen Bank, and then to pay off the loan. However, that was the only instance they used the children's funds, and they only used the funds because their house in Little Rock had not sold and they had no other means to pay the Worthen loan. Thereafter, petitioners immediately recontributed the total amount borrowed. In other words, petitioners borrowed a portion of the children's funds. In this case we do not believe that one action negates petitioners' intention to make a gift of the funds to their children. We conclude that petitioners had a clear and unmistakable intention to absolutely and irrevocably divest themselves of the title, dominion, and control (except normal management) *450 of the funds. See Weil v. Commissioner, 31 B.T.A. 899 (1934). Thus, the interest income is properly taxable to the children, not petitioners. Automobile Deductions
The next issue for decision is whether petitioners are entitled to deduct automobile expenses and depreciation claimed in 1982, 1983, 1984, and 1985 in excess of the amounts respondent determined. Section 162 allows a taxpayer to deduct automobile expenses, i.e., gas, maintenance, repair, insurance, if it is used in furtherance of the taxpayer's business. See Jenkins v. Commissioner, T.C. Memo 1988-292, affd. without published opinion 880 F.2d 414 (6th Cir. 1989). Unless the taxpayer can prove the actual business expenses, only that percentage of the total expenses attributable to the business use is deductible. See Cobb v. Commissioner, 77 T.C. 1096, 1101-1102 (1981); Henry Schwartz Corp. v. Commissioner, 60 T.C. 728, 744 (1973); Jenkins v. Commissioner, supra.The percentage is calculated by multiplying "total expenses" by a ratio consisting of the business miles over the total miles. Bussabarger v. Commissioner, 52 T.C. 819, 828-829 (1969). Additionally, a taxpayer need only establish the percentage of business use *451 to claim depreciation. Henry Schwartz Corp. v. Commissioner, supra.
Petitioner introduced travel vouchers and daily logs for all years in issue. Those documents contain sufficient information for us to determine the total business miles he traveled each year. However, they neither contain, nor did petitioner present any records of the total mileage (business plus personal) each car was driven each year. He did, however, testify that during 1982 he drove the 1980 Corvette a total of 11,570 miles, of which 10,760 were business, and that the black and white Lincolns were used 78 percent for business. Additionally, petitioner testified that during 1983 he drove the 1980 Corvette a total of 1,255 miles, of which 1,075 were business; the 1984 Corvette a total of 7,839 miles, of which 7,384 were business; and the 1981 Lincoln a total of 6,598 miles, of which 4,823 were business. Based on the evidence before us, we find for petitioner on the business use percentage of the Lincolns for 1982. Petitioner testified that the Lincolns' 1982 business use was substantially the same as his 1981 business use. We believe him. See Reynolds v. Commissioner, T.C. Memo. 1980-422. Additionally, we *452 conclude that the business use percentage during 1983 of (1) the 1980 Corvette was 85.7 percent; (2) the 1984 Corvette was 94.2 percent; and (3) the 1981 Lincoln was 68.7 percent. However, we agree with respondent's determinations on the 1980 Corvette's percentage of business use for 1982, and on the White Lincoln for 1983. Petitioners also allege that their total gas, insurance, and repair expenses for the 1982, 1983, 1984, and 1985 exceeded respondent's determination. Petitioner sufficiently proved that he expended $ 1,729.71, $ 1,290.49, and $ 940 for gas in 1982, 1983, and 1984, respectively, and that they were expended for business purposes only. Thus, petitioner is entitled to deduct the following amounts without any reduction based on the application of the percentage of business use: 1982
Black Lincoln
$   735.13
White Lincoln
219.67
1980 Corvette
774.91
$ 1,729.71
1983
1980 Corvette
$   206.48
1980 Lincoln
98.08
1981 Lincoln
481.35
1984 Corvette
504.58
$ 1,290.49
1984
1981 Lincoln
$   266.96
1984 Corvette
673.04 $   940.00 However, petitioners failed to provide any receipts, or documents for insurance and repairs for any of the years in issue, and gas expenses for 1985. Accordingly, we agree *453 with respondent's adjustments for those items. Section 179 Recapture
The next issue for decision is whether petitioners are required to recapture $ 3,371 under section 179 in 1984. Section 179 allows a taxpayer to elect to expense up to $ 5,000 of the cost of certain property, including an automobile, that is used in his trade or business. If the property is not used 100 percent for business purposes, the allowable deduction is determined by its business-use percentage. Sec. 179(c)(1)(A). However, if the property is not used predominantly in a trade or business at any time before the close of the second taxable year following the taxable year in which it was placed in service, the taxpayer is required to recapture any benefit derived from expensing the portion of its cost in the year it ceases to be so predominantly used. Sec. 179(d)(10); sec. 1.179-1(e)(1) and (2), Income Tax Regs. The benefit derived from expensing the property equals the excess of the amount expensed under section 179 over the total amount deductible under section 168 for the portion of the property to which the expensing relates. Sec. 1.179-1(e)(1), Income Tax Regs.
In June 1983 petitioners purchased a 1984 *454 Corvette, and elected to expense $ 5,000 on their 1983 tax return. However, in 1984 and 1985 the business-use percentage of the Corvette was only 41 percent and 20 percent, respectively. Petitioner agrees to these percentages. However, he argues that because he used the Corvette predominantly for business over the life of the car, the recapture provision of section 179(d)(10) does not apply. We do not agree. See McFadden v. Commissioner, T.C. Memo. 1989-174, affd. without published opinion 894 F.2d 1342 (8th Cir. 1989), cert. denied U.S. (1990). Accordingly, we hold for respondent. Additions to Tax
The final issue for decision is whether petitioners are liable for additions to tax for negligence under section 6653(a)(1) and (2) for all taxable years in issue. Section 6653(a)(1) provides that if any underpayment of income tax is due to negligence or intentional disregard of the rules and regulations, the addition is 5 percent of the underpayment. Section 6653(a)(2) imposes an additional amount equal to 50 percent of the interest amount due on the underpayment. Petitioner has the burden of proof on this issue. Rule 142(a). Under the facts of this case we find petitioners were *455 not negligent. To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
*. 50 percent of the interest due on the deficiency.↩
1. Petitioners claimed Keith and Alandrea as dependents on their 1982 and 1983 income tax returns, and Keith, Alandrea, and Aaron as dependents on their 1984 and 1985 income tax returns.↩
2. The black Lincoln was destroyed in an accident in September, and on September 29, 1982, petitioners replaced it by purchasing the white Lincoln.↩
3. On or about February 18, 1983, petitioners traded in the 1980 white Lincoln for the 1981 Lincoln.↩
4. On or about June 22, 1983, petitioners traded in the 1980 Corvette for a 1984 Corvette.↩
5. Due to a mathematical error, petitioner should have deducted only $ 7,794.40.↩
6. Respondent allowed automobile insurance of $ 426.39 for the 1984 Corvette, $ 341.70 for the 1981 Lincoln, $ 303.91 for the 1980 Corvette, and $ 145.25 for the 1980 Lincoln.
7. The parties did not stipulate to the business use ratio of the cars used during 1982 and 1983, or to the total amount of business expenses petitioner incurred while operating the two cars during 1984 and 1985.↩